Dr. Anibal VAZQUEZ, Meris Noelia Carrasquillo, Plaintiffs,

v.

Awilda APONTE ROQUE, Alba N. Caballero, Defendants.

Civ. No. 85–2233 (JAF).

United States District Court, D. Puerto Rico.

Jan. 21, 1988.

Zulma R. Rosario, San Juan, P.R., for plaintiffs.

Emily Rivas, San Juan, P.R., Luis Blanco Matos, Federal Litigation Div., Dept. of Justice, Com. of Puerto Rico, Héctor Rivera Cruz, Secretary of Justice, for defendants.

---

## OPINION AND ORDER

FUSTE, District Judge.

This is a civil rights action brought under 42 U.S.C. sec. 1983, in which plaintiffs claim that defendants deprived them under color of state law of their rights under the first and fourteenth amendments to the United States Constitution. Plaintiff Dr. Aníbal Vázquez Carrión claims that he was dismissed from his position as Executive Director V, Department of Education, Commonwealth of Puerto Rico, where he served as director of the Evaluation Division, Planning and Educational Development, and was reinstated to a career position as General Supervisor, Vocation and Technical Program. This entailed a reduction of salary from $1,865 to $1,406 a month. Furthermore, he claims that after the demotion, he was harassed and discriminated in that no functions were assigned to him until he decided to resign and enjoy early retirement. The discriminatory motive is his known affiliation to the New Progressive Party, all by a Popular Democratic Party administration, the facts occurring after the 1984 general elections held in this jurisdiction.

Dr. Vázquez' wife, coplaintiff Meris Noelia Carrasquillo, a tenured teacher and elementary school director at Cidra, Puerto Rico, claims discrimination and harassment secondary to that suffered by Dr. Vázquez. The defendants are Awilda Aponte Roque, Secretary of Education, and Alba N. Caballero, then Assistant Secretary of Education in charge of personnel matters.

The case was the object of a bench trial ending January 11, 1988. After having

carefully considered the testimonies offered and the evidence received, we must find for defendants.

## I.

Plaintiff Aníbal Vázquez Carrión was employed by the Department of Education as Director, Evaluation Division,[1] a transitory position, in a transitory status from May 31, 1977 to June 30, 1985. The transitory appointment originally made in 1977 was renewed every year. There is no controversy about the fact that prior to his removal, the plaintiff fulfilled all his duties and obligations in a professional and satisfactory manner. Throughout the time, this transitory position was funded from federal or state moneys depending upon availability. There is evidence that such position existed in the Department of Education at least since 1968. Various heads of the Department of Education, belonging to both Popular Democratic and New Progressive administrations, recognized and appointed personnel to the position, even though they always kept a card in their sleeve regarding permanence. The position was at all times transitory in nature and readily callable by a given incumbent.

At the time of the personnel action, taken without hearing or other forms of procedural due process,[2] the position in question was being funded with moneys budgeted as part of the Educational Science Institute, created within the Department of Education through Law No. 20, of July 10, 1978, as amended, 18 L.P.R.A. sec. 1401 (1970). See 18 L.P.R.A. sec. 1403(a) (1979). The Institute of Science had as one of its objectives the evaluation of educational programs. Prior to the personnel action,[3] the stage was set to execute the personnel actions. After the 1984 general elections, the Legislature of Puerto Rico repealed the organic act that created the Institute. See Law No. 27, of June 5, 1985, 18 L.P.R.A. secs. 1401–1407 (note) (1986 Cumm.Pocket Supp.), Joint Exhibit VI. As a result of said legislation, personnel assigned to the Institute, such as Dr. Vázquez, was to be reassigned to other programs within the Department of Education, without prejudice to acquired property rights to employment. As a result of the above, Dr. Vázquez was reassigned to his previously-held career position of General Supervisor, Vocations and Technical Program, earning, of course, a lower monthly salary. There he remained from July 1, 1985 until an undetermined date in February 1986, when he resigned to receive early retirement.[4]

Plaintiff claims that the personnel action taken in his particular case obeyed to political discriminatory reasons, inasmuch as he had taken leave without pay in 1984 to run for a senatorial seat under the New Progressive Party ticket, having lost the election. On this claim, we find that politics played a part, but the target was a broader level affecting all of the Department of Education's positions of a transitory nature similar to that held by Dr. Vázquez. It appears that the new administration disliked the Department organization as found after the elections. In order to "reorganize", and before the personnel actions

1. The record shows, and the defendants do not dispute, that the position in question relates to technical matters related to teaching. The same does not involve any policymaking responsibilities.

2. This action was defended at trial on the basis of the transitory nature of the position, with a known expiration date.

3. Defendants' Exhibit K shows that Dr. Vázquez' transitory appointment 0960–T as Executive Director V expired June 30, 1985. Through a letter dated June 21, 1985, he was terminated and reassigned to his previous supervising position, Central Office, Department of Education, effective July 1, 1985.

4. There is a claim that during the period July, 1985 to February, 1986, Vázquez suffered from discriminatory acts and harassment in the form of inadequate office facilities (desk originally placed behind file cabinets) and no assignment of work. We do not doubt Dr. Vázquez' testimony in this respect; however, there is no preponderant evidence linking the named defendants to said detestable conduct. See Echevarría v. Gracia Anselmi, 642 F.Supp. 843, 851 (D.P.R. 1986), citing from Colón v. CRUV, 115 D.P.R. 503, 506–10 (1984). This repugnant conduct is typical of the highly charged political atmosphere that unfortunately prevails in this jurisdiction.

were taken,[5] not only was the Educational Science Institute abolished by law, but the transitory executive director positions were declared null and void through opinions issued by the local Department of Justice at the request of defendant Aponte Roque. *See* Joint Exhibits XI and XII, respectively. As a matter of fact, all transitory executive director positions, of which about 300 were of a technical nature, were abolished. The Department's 1983 personnel regulation was amended as of May 31, 1985, before the personnel action took place, to incorporate principles of merit, competition, recruitment, and tenure regarding the positions in question. *See* section 7 of the regulation, plaintiffs' Exhibits 39–40. As a result of the above, Dr. Vázquez' transitory appointment was terminated effective June 30, 1985. By the time that the same position was opened for competition under the new rules of the game, Dr. Vázquez had resigned from the Department and was enjoying retirement. Ironically, the eventual replacement for Dr. Vázquez was a political adversary from his hometown of Cidra. The new incumbent, a Mr. Serrano, had occupied the position on an interim basis since the date Dr. Vázquez was terminated. He was formally appointed after Dr. Vázquez resigned. Defendant Aponte Roque claims she could not consider Dr. Vázquez as a competitor for the position, inasmuch as he was not available at the time. There is no evidence that Dr. Vázquez attempted to compete.

The truth of the matter is that the sweeping "administrative reform" did away with a 25–years-of-service competent public servant who suffered great pain and anguish as a result of the process.[6] However, where, as here, a transitory employee is discharged at the time his trans-itory position expires, a mere subjective expectancy that his employment would continue from year to year indefinitely, creates no property interest in employment absent a provable direct political discriminatory act aimed at the given citizen. *Perry v. Sindermann,* 408 U.S. 593, 603, 92 S.Ct. 2694, 2700, 33 L.Ed.2d 570 (1983); *Cheveras Pacheco v. Rivera González,* 809 F.2d 125 (1st Cir.1987).

Sad as it may seem, the stage was properly and legally set to do away with the prior administration's way of doing business. The fourteenth amendment requirement of due process prior to the discharge of an employee with a constitutionally-protected property interest in employment was not triggered. *Cleveland Bd. of Education v. Laudermill,* 470 U.S. 532, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1983). Putting it differently, in Dr. Vázquez' mind there was an expectancy of continued employment, even though he held a transitory position. After all, he was reappointed consecutively from 1977 to 1985. However, legally, said expectation never materialized, and if it did because of the successive appointments, the transitory status of the position, coupled with the repealing of the funding Educational Science Institute and the intervening opinions by the Secretary of Justice, gave the defendants the opportunity to terminate all transitory technical executive director positions and substitute them by competitive positions to be filled after exhausting administrative procedures regarding candidates.

Under these circumstances, defendants are entitled to qualified immunity. Their actions were based on legislative dispositions and executive opinions binding upon the defendant Secretary of Education.[7] *De*

---

5. At trial we perceived, not only from the evidence, but from the demeanor of defendants' witnesses, that behind the reorganization there was secondary gain of a political nature. However, as discussed further in this opinion, the stage was properly and legally set for the actions taken.

6. Education is serious business, especially in Puerto Rico, where one of the main assets is manpower. It is a known fact that the quality of public education is poor. The system is on the rocks. Dispensing of Dr. Vázquez' services left the Department with less than four doctoral degrees available to reorganize the same. Although the defendant has prevailed legally, this sad situation must be pointed out. The poor and needy, those who cannot afford a private education, are the ultimate losers.

7. We do not discuss the legality, or enter into the convincing force of the opinions by the Secretary of Justice. This would be immaterial for the purposes of this analysis. Plaintiffs in-

*Abadía v. Izquierdo Mora,* 792 F.2d 1187 (1st Cir.1986). In any event, defendants have presented an acceptable *Mt. Healthy* defense.[8] In *Mt. Healthy,* the Supreme Court recognized a defendant's right to show that, improper motive notwithstanding, it would have discharged the employee in any event (improper motive political discrimination—discharge based on expiration of transitory position).

Lastly, we must point out that the case of coplaintiff Meris Noelia Carrasquillo must fall, inasmuch as the unexplained transfers in employment she went through were not connected to discriminatory conduct on the part of the named defendants.

DISMISSED.

IT IS SO ORDERED.

---

sinuate that a conspiracy between the Department of Justice and the Secretary of Education existed to do away with the positions. In this case, the evidence does not justify such conclusion. However, *see In re Héctor Rivera Cruz,* *Secretary of Justice,* —— D.P.R. ——, 87 J.T.S. 47 (1987).

**8.** *Mt. Healthy City School District v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).