**Juan A. HERNANDEZ ACEVEDO, et al., Plaintiffs,**

v.

**Awilda APONTE ROQUE, et al., Defendants.**

Civ. No. 86–0370 (JAF).

United States District Court, D. Puerto Rico.

March 25, 1988.

Héctor Urgell Cuebas, Pedro Miranda Corrada, San Juan, P.R., for plaintiffs.

Alice Net–Carlo, Garcia Rodon Correa Marquez & Valderas, San Juan, P.R., for defendants.

## OPINION AND ORDER

FUSTE, District Judge.

Once again we are confronted with a familiar action concerning employment dismissals following the 1984 general elections in Puerto Rico. We dispose of this matter in an increasingly common manner. Pursuant to Fed.R.Civ.P. 56(c) and *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986), the complaint is dismissed.

### I.

Plaintiffs are 23 career employees of the Department of Education ("the Department"), who occupied executive transitory or fixed-term positions. In the summer of 1985, all of the plaintiffs were released from their transitory positions upon expiration of the contract terms and all received reassignments within the Department as career employees at a lower monthly salary. Defendants are Awilda Aponte Roque, the Secretary of the Department ("the Secretary") and Alba N. Caballero Fuentes, the Department's Assistant Secretary for Personnel. Both defendants are sued in their official and individual capacities.

Plaintiffs contend that although they were told they were dismissed from their transitory posts because their terms had expired, the actual cause of their reassignments was their membership in the New Progressive Party ("NPP"), the party that lost the general elections in 1984. Plaintiffs allege that the defendants, members and appointees of the winning Popular Democratic Party ("PDP"), dismissed them for impermissibly partisan reasons. They allege deprivations under the constitutions of the United States and Puerto Rico and request damages as well as the injunctive relief of reinstatement and back pay.

The matter is submitted on defendants' amended motion for summary judgment on the issue of qualified immunity, opposed by plaintiffs, as well as on defendants' motion to dismiss on eleventh amendment grounds. For the reasons that follow we grant both motions and, further, dismiss what remains of the complaint.

### II.

We may without comment dismiss the claim for injunctive relief against these

state officials for violations of state law, *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984), as well as the claim for damages against the defendants as state officials, *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). To address defendants' qualified immunity defense and the adequacy of plaintiffs' fourteenth amendment due process allegations, we must first better define the nature of the positions occupied by plaintiffs.

Pursuant to 18 L.P.R.A. sec. 212, section 6.12 of the Regulations for the Teaching Personnel of the Department of Education ("the Regulations") governs the status of the plaintiffs in this action. That regulation reads:

*Section 6.12—Status of Appointment*

1. The teaching personnel will be given a permanent position provided they meet the requirements [of] P.L. 312, May 15, 1938, as amended, (18 PRL Sect. 214 and following ones), known as the Teachers Permanency Act.

2. The teaching personnel appointed for a regular position and for the trial term period as established by the Act above will be of a probatory nature.

3. All personnel appointed for a position that covers a determined period of time will be transitory.

  a. The teaching personnel will be of a transitory nature if they hold a regular teacher's certificate in the category of the position for which they were appointed on a one year or fraction of a year basis.

  b. The teaching personnel will be provisional transitory if they have been appointment [sic] for a position for which they do not hold a regular teacher's certificate or for which there is no regular certificate in the corresponding category.

It is clear that the Regulations differentiate between probationary and transitory employees. Indeed, the former type, since they anticipate a formal, permanent position, must fulfill the appointment requirements delineated in 18 L.P.R.A. sec. 214. In their complaint, as well as in the Proposed Pretrial Order, plaintiffs state they were permanent employees of the Department occupying transitory positions. Plaintiffs at no time assert, nor does the file show, that they held permanent or probationary status in those positions; therefore, they may not now rely upon the procedural guarantees afforded those categories of employees.[1]

Since nothing in the record leads us to believe any of the plaintiffs were "appointed or promoted to occupy a regular career teaching position", Regulation section 6.13(1), and subject to a probationary term, we conclude that the positions at issue are governed by the Puerto Rico law mandating that a transitory employee "may be removed from service at any time during the term of his appointment." 3 L.P.R.A. Sec. 1336(9). Plaintiffs occupying these positions may also be removed for cause according to section 6.13(6) of the Regulations.

The above analysis indicates it was far from "clearly established" that dismissing the plaintiffs once their terms expired would violate any law. Defendants are therefore entitled to qualified immunity from any damages against them in their personal capacity. *Anderson v. Creighton,* —— U.S. ——, 107 S.Ct. 3034, 97 L.Ed. 2d 523 (1987); *Cheveras Pacheco v. Rivera González,* 809 F.2d 125, 127 (1st Cir.1987).

Moreover, as transitory employees, with no internal Department regulation providing a concrete basis for expecting permanent employment or a hearing before severance, and with the laws of the Commonwealth indicating the propriety of their

1. Section 6.13(3) is similarly unhelpful for plaintiffs. A close reading of that subsection with reference to the others in sections 6.13 reveals that it concerns the probatory terms of those appointed to regular positions pursuant to section 6.13(1). Such personnel, that is, those promoted, may credit their transitory time served to their probatory term. Any other reading, such as plaintiffs' suggestion that all transitory personnel receive that accreditation and thus a due process entitlement, would render meaningless the categories delineated in section 6.12, *supra.*

removal at any time, plaintiffs fail to assert any objective expectancy in continued employment. Furthermore, plaintiffs allege no supporting facts, such as promises or other representations by their superiors, that even tend to suggest they could reasonably expect their contracts to be renewed indefinitely and terminated only for cause. Plaintiffs' opposition to the summary judgment motion, unsupported by a single affidavit, asserts no more than purely subjective expectations and under the standards elucidated by the U.S. Supreme Court in *Perry v. Sindermann,* 408 U.S. 593, 602–03, 92 S.Ct. 2694, 2700, 33 L.Ed.2d 570 (1972), and by the First Circuit in *Cheveras,* 809 F.2d at 127, plaintiffs had no due process entitlement to be heard before their reassignments. Plaintiffs' claim of a fourteenth amendment violation must therefore be dismissed.

### III.

■ The fact that plaintiffs could have been dismissed any time during their tenure without a hearing does not mean they could be dismissed because of their political affiliation. *Cheveras,* 809 F.2d at 127–28. We must further consider, then, whether defendants' actions were motivated by improper partisan considerations.

■ Beyond the naked assertion that "[a]ctually, defendants' non-renewal of plaintiffs' employments [sic] and their reassignments were due solely to the fact that all plaintiffs are members of the NPP", plaintiffs offer none of the required proof that "affiliation with the NPP was the substantial or motivating factor underlying their dismissals." *Kaufmann v. Puerto Rico Telephone Co.,* 841 F.2d 1169, 1172 (1st Cir.1988). No statements are offered tending to demonstrate either a policy of discrimination or the instance of improper motives in these particular cases. Assuming *arguendo* that plaintiffs were all qualified to continue to hold their positions, that they were all NPP members, and that the PDP Secretary was aware of both of those facts when she executed the dismissals, plaintiffs would still fall short of alleging a triable political discrimination cause of ac-

tion. Since plaintiffs were validly dismissed at the conclusion of their transitory terms, more than unsubstantiated assertions are necessary to demonstrate that political affiliation was the reason behind their dismissals. *Mt. Healthy City Board of Ed. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977). *Cf. Kaufmann,* 841 F.2d at 1172–73 ("general and unsupported allegations" that defendants were all PDP members and plaintiffs all members of the NPP, that plaintiffs' dismissal came almost immediately after the PDP took power, and that similarly situated PDP employees were not dismissed were insufficient to maintain a cause of action).

We remind plaintiffs that the burden to prove impermissible discrimination would fall on them at trial and that under U.S. Supreme Court standards as explicated by the First Circuit, "for any substantive claim, whether built upon circumstantial or direct evidence, that party against whom summary judgment is sought must generate the specific facts necessary to take the asserted claim out of the realm of speculative general allegations." *Kaufmann,* 841 F.2d at 1172–73, n. 5. Plaintiffs have failed to meet this requirement and, under *Celotex,* have failed to withstand defendants' motion for summary judgment.

### IV.

We cannot close without making this fourth point. This is our third encounter in recent weeks with wholesale dismissals by this Secretary of Education. The first time, in *Vázquez v. Aponte Roque,* 678 F.Supp. 37 (D.P.R.1988), we reluctantly observed that despite our strong sense of impropriety concerning Dr. Vázquez' dismissal, the evidence presented at trial fell short of that needed to establish a conspiracy between Secretary Aponte Roque's actions and the legal justification for that action offered by the PDP Secretary of Justice, Héctor Rivera Cruz. Then, we noted with dismay that the real losers were those who depended upon the Puerto Rico public education system.

Next, we were confronted with the dismissals of 64 School Managers, *Carrasquillo v. Aponte Roque*, 682 F.Supp. 137 (D.P.R.1988). Even though the appointments as well as the dismissals of these officials were permeated with political considerations, the plaintiffs failed to put forth adequately their cause of action. Once again, we were confronted with the unpleasant task of issuing a ruling that in many ways flew in the face of reality. While we remained convinced of the administration's carefully tailored and executed scheme to "clean the house" of political undesirables, we could not, in the context of the pleadings and the documents on file, afford relief to the plaintiffs.

Now, while it seems to us extremely likely that the plaintiffs in the case at bar would have met a different fate had they been members of the Education Secretary's party, we must again fulfill our duty to the rule of law and find in defendants' favor. Our judicial actions are governed by the papers before us, sometimes notwithstanding our belief to the contrary. One thing remains clear—politics in this district has proven a dangerous business; the people of Puerto Rico, not the party leaders, are hurt most by what, under the current legal standards, can only amount to an endless cycle of unactionable patronage dismissals.

### V.

Finally, we exercise the discretion afforded by *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966) and refuse to consider plaintiffs' pendent allegations of state law violations. The entire complaint shall be dismissed.

IT IS SO ORDERED.