**Reynaldo SERRANO CARABALLO, et als., Plaintiffs,**

v.

**Ramon ROMAN HERNANDEZ, et als., Defendants.**

**Civ. No. 88–1744(PG).**

United States District Court, D. Puerto Rico.

Sept. 7, 1990.

---

Nora Vargas Acosta, Charles S. Hey Maestre, Rio Piedras, Puerto Rico, for plaintiffs.

Myriam Soto Contreras, Federal Litigation Div., Dept. of Justice, Com. of Puerto Rico, San Juan, Puerto Rico, Griselle M. Robles, Hato Rey, Puerto Rico, for defendants.

## OPINION AND ORDER

PEREZ–GIMENEZ, District Judge.

In August of 1989 defendants filed a motion to dismiss or, alternatively, for summary judgment, which now pends before the Court. Eight months later, after a period that saw the parties awaiting for the First Circuit's decision in the case of *Agosto–DeFeliciano v. Aponte–Roque*, 889 F.2d 1209 (1st Cir.1989), plaintiffs filed their opposition to defendants' motion to dismiss. On June 21, 1990, the United States Supreme Court announced *Rutan v. Republican Party*, —— U.S. ——, 110 S.Ct. 2729, 111 L.Ed.2d 52 decidedly modifying the law we were to apply to the facts at bar. Upon careful consideration of the record and the applicable case law, defendants' motion is denied.

Defendants in this action are Ramón Román Hernández, both personally and in his official capacity as former mayor of

San Sebastián, Luis A. Sosa Quiles, also personally and in his official capacity Public Works Supervisor for the Municipality of San Sebastián, and the Municipality of San Sebastián. Plaintiffs are all employees or former employees of the Municipality who allege that several personnel decisions made by the co-defendants have been motivated by a political animus, thus running counter to the clear mandate of 42 U.S.C. Sec. 1983. A brief synopsis of their complaints follows.

We begin with the circumstances surrounding plaintiff Reynaldo Serrano's case. Mr. Serrano held the position of Public Works Director for the Municipality of San Sebastián intermittently since April of 1981. Seven years after first assuming his post, however, the winds of change began to blow: in June of 1988 he was reassigned to the position of Public Works Inspector by the administration of mayor Román Hernández, a change which entailed a salary reduction and diminished job-related responsibilities. In Mr. Serrano's view of things, the change was based on the lawful expression of his First Amendment rights.

Turning to co-plaintiff Gilberto Hernández' case, we note that up and until July 16, 1988 he had held the position of school bus driver for the Municipality of San Sebastián. On that date, however, Mr. Hernández was instructed to report to his new position as a garbage truck driver, a change which, objectively speaking, entailed a reduction in Mr. Hernández' weekly work hours (and therefore a corresponding reduction in pay), and, from Mr. Hernández' subjective point of view, was less desirable than his previous position as driver of the school bus. The transfer, however, was notified to Mr. Hernández through a letter signed by Personnel Director Cesar Mercado Cuevas and dated August 1, 1988.

Co-plaintiff Myrna Díaz occupied the position of Office Clerk I until December 24, 1985, when she was appointed Personnel Director. On August 31, 1987, she was reclassified to Office Clerk III, a position which she occupied until June 14, 1988, when she was again reclassified to Office Clerk I. Within the bureaucratic scheme of the Municipality of San Sebastián, the position of Personnel Director ranks higher, and thus carries with it a higher salary, than the positions of Office Clerk I or III do, and so the reclassifications were considered by Mrs. Díaz to be demotions.

In July of 1987, co-plaintiff Angel López was appointed by co-defendant Román Hernández to the position of driver for the probationary period of one year. On May 2, 1988, the other personal co-defendant in this case, Luis Sosa, submitted a negative Evaluation Report on the performance of Mr. López to former mayor Román Hernández. The following month, Mr. López' probationary period was not approved. Plaintiff López claims that the actions of both co-defendants were politically motivated.

Co-plaintiff Ana Pérez Vázquez was a contractual employee for the municipality of San Sebastián who had been employed as a secretary for the Department of Housing and Urban Developments (H.U.D.) and who over the years had been assigned to various municipal departments (e.g., Office of Federal Programs, Department of Public Works, Finance Department, and Municipal Police Department). She had a yearly contract which had been renewed for the same position during the past four years, up and until June 30, 1988, when it was unilaterally terminated by the mayor's administration. Under its original terms, Ms. Vázquez' contract would have expired on September 30, 1988.

Plaintiffs collectively submit that the former mayor's actions stemmed from their participation in a local radio talk show in which they were most critical of his administration and from their reluctance to work on behalf of his candidacy during the primary elections.[1] Were this to be the case,

---

**1.** Plaintiffs and defendants are all members of the Popular Democratic Party, but the plaintiffs were all supporters of co-defendant Román Hernández' opponent in the party's primary race. (The former mayor, who was the nominating authority behind all the above-outlined decisions, lost his re-election bid at the primary stage in June of 1988, but he nevertheless re-

plaintiffs' First Amendment rights to freedom of expression and association would be squarely implicated. Defendants, on the other hand, contend that their actions conformed always to the spirit and the letter of the Law.

The legal principles we are to apply to the matter at bar are not much in doubt. In *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) and *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), the Supreme Court of the United States decided that the First Amendment forbids government officials to discharge or threaten to discharge public employees solely for not being supporters of the political party in power, unless party affiliation is an appropriate requirement for the position involved. In *Rutan v. Republican Party*, supra, the Supreme Court extended the *Elrod* and *Branti* rule to promotions, transfers, recalls, and other hiring decisions based on party affiliation and support. As these cases betoken, the "ultimate question" to be answered when issues of this nature arise is "whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Branti*, 445 U.S. at 518, 100 S.Ct. at 1294.

In approaching this issue, the First Circuit has followed a two-step analysis. *Fontane–Rexach v. PREPA*, 878 F.2d 1493, 1494 (1st Cir.1988), *González–González v. Zayas*, 878 F.2d 1500, 1503–1504 (1st Cir. 1988) (Campbell, C.J., dissenting). The first step requires the Court to examine whether the position at issue relates to partisan political interests or concerns. *Jiménez Fuentes v. Torres Gaztambide*, 807 F.2d 236, 241–242 (1st Cir.1986). In making this determination, consideration is generally given to whether the agency employing the plaintiff handled matters potentially subject to partisan political differences and to focus upon how the plaintiff's

position influenced the resolution of such matters. *Méndez Palou v. Rohena Betancourt*, 813 F.2d 1255, 1258 (1st Cir. 1987).

If the first inquiry is satisfied, "the next step is to examine the particular responsibilities of the position to determine whether it resembles a policymaker, a privy to confidential information, a communicator, or some other office holder whose function is such that party affiliation is an equally appropriate requirement." *Jiménez Fuentes*, 807 F.2d at 242, *Méndez Palou*, 813 F.2d at 1258. *If the answer to both questions is yes, then party affiliation is indeed an appropriate requirement for the job and persons holding office have no constitutional protection from patronage dismissal or other hiring decisions. If the answer to either of these questions is no, then the plaintiffs have a property interest in their continued employment and will be entitled to relief if they can establish that these personnel decisions did not conform to the requirements of procedural due process,* Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), *or that they were made solely on the basis of their political affiliation.* Branti, 445 U.S. at 517, 100 S.Ct. at 1294.

Before reaching the merits of each of plaintiffs' cases, we must also note that summary judgment would be proper only if the pleadings and other submissions show that "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c), *Albert v. Maine Cent. R. Co.*, 905 F.2d 541, 543 (1st Cir.1990). "[A] genuine issue exists if there is sufficient evidence supporting the claimed factual dispute to require a choice between the parties' differing versions of the truth at trial." *Griggs–Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir.1990). "A material issue is one that affects the outcome of the suit,

mained in office through January of 1989). Although plaintiffs attempted to attach some significance to the fact that this case concerned intra-party discrimination and not inter-party discrimination, we believe the language of the Supreme Court decisions, holding that person-

nel decisions cannot "be constitutionally based on party affiliation *and support,*" Rutan v. Republican Party, —— U.S. ——, 110 S.Ct. 2729, 2729, 111 L.Ed.2d 52 (1990) (emphasis ours), is broad enough to make the *Branti–Elrod* doctrine fully applicable to this case.

that is, an issue which, perforce, needs to be resolved before the related legal issues can be decided." *Id.* The record, of course, must be viewed in the light most amicable to the non-moving party, and all inferences that are to be made must be indulged in their favor. *Oliver v. Digital Equipment Corp.*, 846 F.2d 103, 105 (1st Cir.1988), *Brennan v. Hendrigan*, 888 F.2d 189, 191 (1st Cir.1989), *Mack v. Great Atlantic and Pacific Tea Co.*, 871 F.2d 179, 181 (1st Cir.1989).

■ Against this backdrop, we note that the cases of plaintiffs Reynaldo Serrano and Myrna Díaz stand on equal footing. They respectively held the positions of Public Works Director and Personnel Director for the Municipality of San Sebastián during the periods at issue and defendants point to the Municipality's Ordinance No. 39 (1987–88) to argue that these positions were classified as trust positions so that plaintiffs therefore had no constitutional protection from patronage dismissals, transfers, or demotions. *See* defendants' motion, p. 4–6, and defendants' Exhibit XXIV. Plaintiffs point out, however, that said ordinance was enacted in June 29, 1988 to be "effective immediately and having emergency and necessary character," *see* plaintiffs' motion, p. 3, that is to say, after the alleged acts of discrimination took place. Thus, an issue of fact arises over what were the functions, responsibilities, and tasks inherent to the positions of Public Works Director and Personnel Director at the time the alleged discriminatory practices took place. The parties having failed to brief the Court on this aspect of the case, we therefore do not have before us the necessary factual foundation to determine whether political affiliation was an appropriate requirement for the effective performance of the public offices involved. This being so, summary judgment as to plaintiffs Reynaldo Serrano and Myrna Díaz' cases must be denied.

■ As for plaintiff Gilberto Hernández' case, we do not hesitate to conclude that his position as driver of school buses and sanitation trucks for the Municipality of San Sebastián is not one where party affiliation and political support are appropriate requirements for their effective performance. This being so, he would be entitled to relief if he can prove that his transfer was made in violation of due process or based on his political beliefs. Defendants have submitted sworn affidavits to prove that the decision to transfer Mr. Hernández was made in furtherance of the best interests of the municipality: on the one hand, a school bus driver has to keep working during the summertime unless he is also on vacation and, on the other, the effective performance of the sanitation services is always a top priority within the municipality. *See* defendants' motion, p. 8–9. Plaintiff Hernández has pointed out, however, that he was notified of his transfer on August 1, 1988, *see* defendants' Exhibit XVI, which is precisely the day on which the school year commenced in 1988, *see* plaintiffs' Exhibit L, and when the need for school bus drivers was greatest. Thus, defendants justification appears to be pretextual and an issue of fact looms as to whether the motive behind plaintiff's dismissal was political. The issue is both genuine, in that there is evidence in the record which would support both versions of "the truth," and material, in that it clearly affects the outcome of the claim. *Griggs–Ryan*, 904 F.2d at 115. Therefore, summary judgment as to plaintiff Gilberto Hernández' claim must be denied. *See Caro v. Aponte Roque*, 878 F.2d 1, 2 (1st Cir.1989) (an issue of fact as to whether motive for dismissing plaintiff was political precludes the entry of summary judgment).

■ Plaintiff Angel López' case requires a somewhat different analysis. He held, as defendants emphasize, the position of driver for the Municipality of San Sebastián for the probationary period of one year. While it is true that the unanimous weight of the case law establishes that, under the due process clause, transitory employees do not enjoy a property interest in continued employment beyond the time their probationary periods expire, that they may be discharged for no reason whatsoever, and that no prior hearing need be held, *Chéveras Pacheco v. Rivera González*, 809 F.2d 125

(1st Cir.1987), *Caro v. Aponte Roque*, 878 F.2d 1 (1st Cir.1989), *Department of Natural Resources v. Correa*, 87 J.T.S. 35, *Pacheco v. Department of Public Instruction*, 108 D.P.R. 592 (1979), *Mt. Healthy City Board of Ed. v. Doyle*, 429 U.S. 274, 283, 97 S.Ct. 568, 574, 50 L.Ed.2d 471 (1976), *cf. Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), it is also true that "there are some reasons on which the government may not rely." *Perry v. Sindermann*, 408 U.S. 593, 597, 92 S.Ct. 2694, 2697, 33 L.Ed.2d 570 (1972). A citizen's exercise of his First Amendment rights is one of them, and it is precisely the right on which plaintiff López has based his civil rights claim. *See Branti*, 445 U.S. at 512 n. 6, 100 S.Ct. at 1291 n. 6 ("[A]fter *Elrod*, it is clear that the lack of reasonable expectation of continued employment is not sufficient reason to justify dismissal based solely on an employee's private political beliefs"), *Hernández Acevedo v. Aponte Roque*, 684 F.Supp. 18, 21 (D.P.R.1988). Thus, his probationary status does not give the government a free license to commit First Amendment violations.

■ Our inquiry into the matter, however, does not end there. Mindful that "[a] borderline or marginal candidate ... ought not to be able, by engaging in [constitutionally] protected conduct, to prevent his employer from assessing his performance record and reaching a decision not to rehire on the basis of that record," the Supreme Court in *Mt. Healthy City Board of Ed. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1976) set out to strike a balance between "the interests of ... a citizen in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Id.* at 284, 286, 97 S.Ct. at 574, 575. The test requires the plaintiff to establish, first, that his constitutionally protected conduct was the substantial or motivating factor behind the decision of the nominating authority not to rehire him, at which point the burden shifts and it is the nominating authority's responsibility to prove that it would have reached the same decision regardless of the protected conduct. *See also Wilkerson v. Texas*, —— U.S. ——, 110 S.Ct. 292, 107 L.Ed.2d 272 (1989) (following *Mt. Healthy*). In the instant case, defendants have submitted that plaintiff López' political affiliation had no bearing on their decision not to approve his probationary period and that, much to the contrary, their decision was made wholly on the basis of a disfavorable evaluation of his performance made by plaintiff's supervisor (and co-defendant) Luis Sosa. *See* defendants' motion, p. 14. Plaintiff López, however, has precisely attacked the motives behind said evaluation, contending that it was "pretextual" and motivated solely by co-defendants Sosa and Román's intent to violate his First Amendment rights. *See* plaintiffs' opposition, pp. 15–16. Once again, then, an issue of fact regarding defendant's motives for transferring plaintiff Angel López arises, an issue which is both genuine and material and which precludes the entry of summary judgment in favor of defendants.

With regard to plaintiff Ana Pérez, we note that, except for a passing reference on page 16 of plaintiffs' opposition, the parties have apparently forgotten to argue her cause. The motions for and in opposition to summary judgment thus having no bearing on her case, the same must continue on the basis of the allegations of her complaint. We do intimate, however, that her situation is akin to that of plaintiff Angel López, and hence the same legal principles would apply.

■ We write briefly to discard defendants' remaining arguments. First, defendants submit that the doctrine of qualified immunity shields them from liability in the instant case. As the parties point out, where an issue of qualified immunity arises, the proper inquiry for the Court "is not whether a particular public employee falls within or without the *Elrod–Branti* realm, but whether, at the time the adverse employment decision was undertaken, it was clearly established that employees in the particular positions at issue ... were [constitutionally] protected from patronage dismissal," *Fontane–Rexach*, 878 F.2d at

1496–1497, *Méndez Palou,* 813 F.2d at 1259, *Figueroa–Rodríguez v. López–Rivera,* 878 F.2d 1478, 1480 (1st Cir.1989) (en banc), or, in the wake of *Rutan v. Republican Party,* any other adverse personnel decision. The doctrine of qualified immunity, however, protects only state or local government officials: its protection does not extend to municipalities or municipal employees. *DeVasto v. Faherty,* 658 F.2d 859, 866 (1st Cir.1981), *Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980). Defendants all being employees of the Municipality of San Sebastián, the doctrine of qualified immunity can afford them no solace.

Next, defendants contend that the claims of some of the plaintiffs are barred by the one-year statute of limitations which applies to civil rights actions. *See Rodríguez Narváez v. Nazario,* 895 F.2d 38 (1st Cir. 1989). A quick review of the record, however, reveals that all of the personnel decisions at issue took place during the months of May and June of 1988, and that the complaint was filed in October of that same year. Defendants' contention is therefore meritless.

■■■ Thirdly, it is argued that, given the fact that the right to bring an action under Sec. 1983 is personal in nature and does not accrue to a relative, *Dohaish v. Tooley,* 670 F.2d 934 (10th Cir.1982), *Soto Gómez v. López Feliciano,* 698 F.Supp. 28 (D.P.R.1988), plaintiffs' spouses and conjugal partnerships lack standing to sue in the present action. While defendants' general statement of the law is correct, it does not have the desired effect. In *Rodríguez v. Comas,* 888 F.2d 899, 903 (1st Cir.1989), our Appellate Court recognized the right of plaintiffs to be included as pendent parties in Sec. 1983 actions as long as their claims share a common nucleus of operative fact with a claim over which federal courts have jurisdiction and the exercise of pendent party jurisdiction promotes judicial economy and avoids jury confusion. These conditions are met in the instant case and we must therefore allow the spouses and conjugal partnerships to assert, as pendent party plaintiffs, their claims for mental suf-ferings and lost earnings under the Puerto Rico Civil Code.

Finally, defendants direct at our attention to the fact that the case law requires a plaintiff attempting to state a case against a governmental body to plead that the conduct complained of constitutes an official policy, custom, or a generalized practice of the defendant. *See Monell v. Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), *City of St. Louis v. Praprotnik,* 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988)). In defendants' view, plaintiffs in this case have failed to meet this fundamental pleading requirement. Yet another quick review of the record, however, reveals that defendants' contention is utterly without merit. *See* Par. 10 of the Complaint. We therefore reject it without further discourse.

WHEREFORE, defendants' motion for summary judgment is hereby DENIED. Trial will be held on November 12, 1990, in accordance with the legal principles which have been outlined above.

IT IS SO ORDERED.