José R. REMUS–MILÁN,
et al., Plaintiffs,

v.

Marcos IRIZARRY–PAGÁN,
et al., Defendants.

Civil No. 13–1716 (PAD).

United States District Court,
D. Puerto Rico.

Signed Jan. 28, 2015.

Carolina Guzman–Tejada, Aldarondo & Lopez Bras, PSC, Comerio, PR, Claudio Aliff–Ortiz, David R. Rodriguez–Burns, Sheila J. Torres–Delgado, Eliezer Alberto Aldarondo–Lopez, Eliezer Aldarondo–Ortiz, Ivan M. Castro–Ortiz, Aldarondo & Lopez Bras, Guaynabo, PR, for Plaintiffs.

Carl E. Schuster, Elizabeth Perez–Lleras, Andres C. Gorbea–Del Valle, Schuster Aguilo, LLP, San Juan, PR, for Defendants.

## OPINION AND ORDER

PEDRO A. DELGADO–HERNÁNDEZ, District Judge.

Plaintiffs José Remus–Milán, Ferdinand Detrés–Arroyo, Antonio Irizarry–Hernández, Carlos Nazario–Ocasio, David Rodríguez–López, Carmen Rosado–Rivera, Isidro Baez–Rivera and Maria Torres–Martinez initiated this action against Marcos Irizarry–Pagan, Jacqueline Rodriguez–Irizarry, and Ahymet Rivera–Rodriguez in their personal and official capacities, and against the Municipality of Lajas (Docket No. 10), seeking declaratory and injunctive relief and damages under Federal and Puerto Rico law (Docket No. 10).[1] Before the Court is defendants' "Motion to Dismiss for Failure to State a Claim Upon Which Relief can be Granted"—Docket No. 36—filed by Marcos Irizarry–Pagan, Jacqueline Rodriguez–Irizarry, Ahymet Rivera–Rodriguez, in their personal and official capacities, and the Municipality of Lajas. For the reasons stated below, defendants' motion is DENIED.[2]

## I. BACKGROUND

From January 1997 through December 2008, Irizarry–Pagán a/k/a "Turin"[3] was the Mayor of the Municipality of Lajas

---

**1.** Maria Torres–Martínez' claims were dismissed without prejudice on June 13, 2014 for failure to announce new legal representation and to show cause as ordered on May 29, 2014 (Docket No. 32).

**2.** The Court could have simply denied defendants' motion to dismiss without prejudice under *Grajales v. Puerto Rico Ports of Authority*, 682 F.3d 40, 46 (1st Cir.2012) (once the parties have invested substantial resources in discovery, a district court should hesitate to entertain a motion asserting a complaint's failure to satisfy the plausibility requirement). Defendants challenge the application of *Grajales*, claiming that, because not a single deposition has been taken, discovery exchanged to date cannot be considered "extensive discovery". Their characterization does not contest that (i) hundreds of documents have been exchanged, (ii) depositions have been scheduled and confirmed, and (iii) the Court ordered depositions to take place as originally scheduled until otherwise stayed, after defendants unilaterally cancelled the depositions in this case (Docket No. 50 and Docket No. 61 at fns. 3 y 4). Moreover, it goes without saying that discovery entails more that depositions. The Court, however, has considered the arguments raised by defendants in their motion to dismiss, and as discussed in this Opinion, finds them unpersuasive.

**3.** *See*, Docket No. 10 at fn. 3.

under the Popular Democratic Party ("PDP"). After the general elections held in Puerto Rico on November 2008, the candidate running for Mayor of Lajas under the New Progressive Party ("NPP"), Leovigildo Cotté–Torres a/k/a "Leo"[4], defeated Irizarry–Pagán and became the Mayor of Lajas from January 2009 through December 2012. As a result of the general elections held on November 2012, Irizarry–Pagán defeated Cotté–Torres and became once again the Mayor of Lajas.

Plaintiffs lost their jobs when the Municipality's administration switched from NPP to the PDP, and sued defendants under 42 U.S.C. § 1983, essentially claiming they were discriminated against because of their political affiliation in violation of the First Amendment. Defendants contend the case should be dismissed because plaintiffs failed to plead sufficient facts to state a claim upon which relief can be granted, and qualified immunity shields the individual defendants from liability (Docket No. 36, at pp. 24–27).[5] Plaintiffs opposed defendants' motion and asked that the Court summarily deny it without prejudice to raising the arguments in a motion for summary judgment (Docket Nos. 51 and 37, respectively). Defendants replied to both requests (Docket Nos. 38 and 61), and plaintiffs sur-replied (Docket No. 64).

## II. STANDARD OF REVIEW

To survive a motion under Fed.R.Civ.P. 12(b)(6), a complaint must allege a plausible entitlement to relief. *Rodríguez–Vives v. Puerto Rico Firefighters Corps,* 743 F.3d 278, 283 (1st Cir.2014); *Rodríguez–Reyes v. Molina–Rodríguez,* 711 F.3d 49,

53 (1st Cir.2013); *Rodríguez–Ortiz v. Margo Caribe,* 490 F.3d 92, 95 (1st Cir.2007). Plausibility involves a context-specific task calling on courts to examine the complaint as a whole, separating factual allegations (which must be accepted as true) from conclusory allegations (which need not be credited). *García–Catalán v. United States,* 734 F.3d 100, 103 (1st Cir.2013); *Morales–Cruz v. Univ. of P.R.,* 676 F.3d 220, 224 (1st Cir.2012).

While detailed factual allegations are not required, more than labels and conclusions are needed. *Ocasio–Hernández v. Fortuño–Burset,* 640 F.3d 1, 12 (1st Cir.2011). Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but has not shown—that the pleader is entitled to relief. *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d ·868 (2009).

The complaint must be viewed as a whole, construing well-pleaded facts in the light most favorable to plaintiff, accepting their truth, and drawing all reasonable inferences in plaintiff favor. *Foley v. Wells Fargo,* 772 F.3d 63, 68 (1st Cir. 2014); *García–Catalán v. United States,* 734 F.3d 100, 103 (1st Cir.2013). Dismissal is not warranted if, so measured, the allegations plausibly narrate a claim for relief. *Carrero–Ojeda v. Autoridad de Energía Eléctrica,* 755 F.3d 711, 717 (1st Cir.2014).[6]

## III. DISCUSSION

### A. First Amendment Claims

Section 1983 is the conventional vehicle through which relief may be sought

***

4. *Id.* at fn. 4.

5. Defendants also moved to stay discovery pending adjudication of the motion to dismiss (Docket No. 42).

6. The Court has not considered the exhibits attached in support of plaintiffs' opposition since the "narrow exception" that would allow consideration of documents outside of the complaint is inapplicable here. *See, Carrero-Ojeda,* 755 F.3d at 716–717.

for claims of political discrimination by state actors. For this purpose, Puerto Rico is the functional equivalent of a state. *Rodríguez–Reyes v. Molina–Rodríguez,* 711 F.3d at 54. To establish a *prima facie* case of political discrimination, a plaintiff must demonstrate: "(1) that he and defendant have opposing political affiliations, (2) that the defendant is aware of the plaintiff's affiliation, (3) that an adverse employment action occurred, and (4) that political affiliation was a substantial or motivating factor for that adverse employment action." *García–González v. Puig–Morales,* 761 F.3d 81, 96 (1st Cir.2014).

Liability may not be based on a *respondeat superior* theory under section 1983. *Ramírez–Lluveras v. Rivera–Merced,* 759 F.3d 10, 19 (1st Cir.2014). Each defendant must have personally participated in, encouraged, condoned, or acquiesced in rights-violating conduct. *Ayala–Rodríguez v. Rullán,* 511 F.3d 232, 236 (1st Cir.2007); *Ocasio–Hernández v. Fortuño–Burset,* 640 F.3d 1, 16. Correspondingly, a plaintiff must plausibly plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution. *Ashcroft v. Iqbal,* 556 U.S. 662, 676–677, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

Defendants claim plaintiffs have failed to allege a plausible *prima facie* case of political discrimination under Section 1983. A reading of the allegations in light most favorable to plaintiffs shows otherwise.

First, plaintiffs allege that Lajas is a small Puerto Rico municipality where citizens generally know each other and political affiliations, participation, activism and beliefs are commonly known (Docket No. 10 at ¶ 24); that they are former fixed-term or "transitory employees" of the municipality hired early into Cotte–Torres' NPP administration and occupied low-level clerical positions for which political affilia-

tion is not an appropriate requirement (*Id.* at ¶¶ 7–14); that they never received negative evaluation of their performance (*Id.* at ¶¶ 7–14, 48); and that their appointments were consistently renewed time after time (*Id.*).

Second, plaintiffs allege they are well-known supporters of former NPP-affiliated Mayor Cotte–Torres—who defeated Irizarry–Pagan after twelve (12) years in office—and collaborators of his political campaign. *Id.,* ¶¶ 23–25. Relatedly, that their political affiliation and activism were well-known by the Lajas community in general, and defendants in particular. *Id.* at ¶¶ 24–25.

Third, plaintiffs allege that political affiliation was a substantial or motivating factor for the allegedly adverse employment actions they suffered, pointing out that Irizarry–Pagán was thirsty for political vengeance when he decided to challenge Cotte–Torres in the 2012 election (*Id.* at ¶ 30), and that this decision created a highly-charged political atmosphere in the Municipality and its departments. *Id.* ¶¶ 32–39. To that end, they assert that in June 2012, a protest took place in front of City Hall where Irizarry–Pagán was present, and where Rivera–Rodríguez addressed the protestors saying "I bet $3,000.00 that the PDP is going to win the elections and I am going to help [Irizarry–Pagán] get rid of the NPPers that [Cotte–Torres] appointed." *Id.* at ¶ 34–35. Similarly, in the months before the elections Rodríguez–Irizarry was heard on several occasions by one of the plaintiffs referring to the NPPers in the Municipality as inept, assholes ("pendejos"), wimps ("mama'os"), bastards ("cabrones"), and similar epithets. *Id.* at ¶ 36.

Fourth, plaintiffs allege that when Irizarry–Pagán defeated Cotté–Torres the political atmosphere turned even more in-

tense. *Id.* at ¶¶ 36–39. In one incident, Rivera–Rodríguez went to the Public Works Department where Plaintiffs worked as part of the transition process, and explicitly told one of the plaintiffs that Irizarry–Pagán "told me to get rid of every NPPer in the Public Works Department." *Id.* at ¶ 37. In a separate incident witnessed by a plaintiff, Rivera–Rodríguez said out loud in one of the hallways in City Hall that she "was going to help [Irizarry-Pagán] wipe out the NPPers in the Municipality." *Id.* at ¶ 38. Finally, in early January 2013, plaintiffs claim that Irizarry–Pagán, accompanied by several PDP-affiliated municipal employees wearing t-shirts with the PDP color red that read "happy red" arrived at City Hall and fixed a red bow in the front door. *Id.* at ¶ 39.

Fifth, plaintiffs allege that when Irizarry–Pagán was formally sworn in as mayor and became the municipality's nominating authority (*Id.* at ¶¶ 40–41), he appointed his loyal foot soldiers, Rodríguez–Irizarry and Rivera–Rodríguez, to the trust positions of Human Resources Director and Public Works Director for the Municipality, respectively. *Id.* at ¶ 42. Even though (i) there were no complaints as to plaintiffs' job performance, (ii) plaintiffs were already trained to perform the tasks their former positions required; and (iii) that such tasks needed to be performed regardless of their political affiliation, defendants

refused to rehire or recall plaintiffs because of their political affiliation. *Id.* at ¶¶ 43–51.[7]

Sixth, plaintiffs allege that their positions remained open after Irizarry–Pagan became the Mayor and that they requested to be hired back to their jobs in writing and/or verbally, but defendants refused. *Id.* at ¶¶ 50–52.[8] In the end, the threats materialized when plaintiffs' positions were filled with political sympathizers and collaborators of Irizarry–Pagán and the PDP that had never before performed those duties and functions. *Id.* at ¶¶ 53–55. Defendants renewed the appointments of those employees affiliated with the PDP whose terms had expired in the same manner and form as Plaintiffs' appointments. *Id.* at ¶ 56. Specific allegations as to each of the plaintiffs were also included at paragraphs 65 to 192 of the Amended Complaint.[9]

In line with established authority, it is apparent that plaintiffs' have stated a colorable First Amendment claim. *See, Ayala–Rodriguez v. Rullan,* 511 F.3d 232, 235 (1st Cir.2007)(under the *Elrod* line of cases, plaintiff cannot be terminated, nor renewal of his contract refused, for partisan political reasons; that plaintiff was an independent contractor and not an employee does not matter); *Padilla–Garcia v. Guillermo Rodriguez,* 212 F.3d 69, 75 n. 3

---

7. At the time of the alleged non-renewal of their appointments, Remus–Milán worked as a "Maintenance Worker" (Docket No. 1 at ¶ 7); Detrés–Arroyo and Irizarry–Hernández were "Workers" (*Id.* at ¶¶ 8–9); Nazario–Ocasio was an "Office Clerk" responsible, among others, for the purchases for the Sports and Recreation Department (*Id.* at ¶¶ 10 and 120); Rodriguez–López and Rosado–Rivera were "Maintenance Employees" (*Id.* at ¶¶ 11 and 12); Torres–Martinez was a "Watchperson" responsible for watching the entry and leave of the vehicles in the Public Works Department, among others (*Id.* at ¶¶ 13 and 168); and Báez–Rivera was a "Janitor" (*Id.* at ¶ 14).

8. In fact, the Amended Complaint avers that when two plaintiffs asked Irizarry–Pagán whether they could have their jobs back on two separate and distinct occasions, he explicitly rejected their attempts, and "bluntly" told them that he could not do anything because the jobs in his administration were for "his loyal political followers." *Id.* at ¶ 52.

9. Paragraphs 178 to 192 are erroneously numbered in the amended complaint.

(1st Cir.2000) (it is settled law that the *Elrod–Branti* doctrine extends to a politically motivated non-renewal of a term of employment, regardless of the transitory nature of the position); *Nieves–Villanueva v. Soto–Rivera,* 133 F.3d 92, 98 (1st Cir. 1997)(a municipality may not allow transitory employees' contracts to expire if the primary motive is to punish them for their political affiliation; the fact that a transitory employee does not have a reasonable expectation of renewal in his or her employment that would require due process protections does not defeat a First Amendment claim).

## B. Municipal Liability

Defendants argue that the Amended Complaint lacks any factual predicate to conclude that the Municipality's policy or its custom and usage ("uso y costumbre") resulted in the violation of plaintiffs' constitutional rights (Docket No. 36 at pp. 21–24). Plaintiffs vehemently disagree, claiming they have plausibly established that the Mayor—as the nominating authority of the Municipality as a matter of law—directed, ordered, executed and/or authorized the politically motivated adverse employment actions alleged.

 Municipalities may be sued directly under Section 1983 for monetary, declaratory, and injunctive relief. *Monell v. City of New York,* 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). For a municipality to be liable under Section 1983, a plaintiff must prove that a municipal policy or custom was the "moving force [behind] the constitutional violation." *Id.,* at 690–691, 98 S.Ct. 2018. That is, a plain-

tiff must prove a deprivation of a constitutional right by means of "the execution of the government policy or custom." *Id.,* at 690–694, 98 S.Ct. 2018; *see also, Concepción v. Municipality of Gurabo,* 560 F.Supp.2d 139, 141–142 (D.P.R.2008). Where the decision-maker possesses final authority to establish municipal policy with respect to the action ordered, liability attaches. Under Puerto Rico law, the actions of a mayor "constitute [ ] the official policy of the municipality." *Concepción,* 560 F.Supp.2d at 142 (internal citations omitted).

 Plaintiffs allege that all defendants were policymakers and high ranking officials of the Municipality, to wit: the Mayor, the Director of Human Resources, and the Public Works Director, committed acts of political discrimination, and that the Municipality—through the Mayor and the co-defendants—renewed appointments for all previous employees affiliated with the PDP, in accordance with the Mayor's intention of saving the positions in the Municipality for those that supported his desire of reclaiming Lajas' City Hall. It is plaintiffs' contention that these illegal actions were politically motivated and directed, ordered, executed and authorized by the defendants.[10]

Taken as true, plaintiffs' allegations give rise to plausible claims of entitlement to relief against the Municipality. *See, Maldonado v. Municipality of Barceloneta,* 682 F.Supp.2d 109, 159 (D.P.R.2010)(mayor's actions constituted the official policy of the municipality; therefore, the municipality may be held liable under Section 1983); *Concepción v. Municipality of Gurabo,*

**10.** Although it is not clearly articulated, defendants seem to reduce the Mayor's actions by claiming he should be considered a "newly appointed" Mayor such that the alleged "custom" was not well-settled and widespread. The Court is not persuaded by this argument.

It is clear from the allegations that Irizarry–Pagán reclaimed the position he occupied for twelve (12) years before being defeated by the NPP in 2012. Taking the allegations as true, the actions attributed to the Mayor constitute the official policy of the Municipality.

560 F.Supp.2d 139, 141–142 (D.P.R.2008)(dismissal was not warranted when plaintiffs' allegations that defendants were policymakers and high ranking officials of the Municipality, and that they committed acts that constituted discriminatory treatment, taken as true, gave raise to claims that can potentially provide entitlement to relief against the municipality).

## C. Qualified immunity

Defendants argue they are shielded by the doctrine of qualified immunity. Qualified immunity is an affirmative defense that operates as "a shield against unwarranted charges that the official violated the Constitution in the course of performing the functions of the office." *Garnier v. Rodriguez*, 506 F.3d 22, 26 (1st Cir.2007) (internal citation omitted). This defense can be raised at the motion to dismiss stage, "lest unwarranted lawsuits impede the proper functioning of government." *Id.; see also Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) (holding that qualified immunity is available to "ensure that insubstantial claims against government officials [will] be resolved prior to discovery.") (internal quotation omitted).

As a threshold matter, the Court notes that the defense does not shield government officials from claims for equitable relief. *Lugo v. Alvarado*, 819 F.2d 5, 7 (1st Cir.1987). Therefore, defendants' claim of qualified immunity against the equitable relief claims fails as a matter of law. The same conclusion follows regarding their claim of qualified immunity on the remaining claims.

The Court employs a two-part test when evaluating a defendant's claim of qualified immunity, focusing on: (1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and if so (2) whether that right was clearly established at the time of the defendant's violation. *Pearson v. Callahan*, 555 U.S. 223, 232, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009); *Maldonado v. Fontanes*, 568 F.3d 263, 269 (1st Cir.2009) and cases cited therein. While considering whether the right was clearly established, two (2) additional factors are considered: (i) the clarity of the law at the time of the alleged civil rights violation, and (ii) whether a reasonable defendant would have understood that his conduct violated the plaintiffs' constitutional rights. *Maldonado*, 568 F.3d at 269. Measured against these standards, defendants' argument fails.

As discussed, a careful consideration of the allegations in the Amended Complaint confirms plaintiffs sufficiently allege that the defendant plausibly violated their First Amendment rights. Moreover, in their motion "[d]efendants concede that [p]laintiffs had a clearly established right not to be subject to political discrimination . . ." (Docket No. 36 at p. 27). They, however, add that it would seem normal, if not natural, at least to a lay person, that temporary or transitory employees be dismissed once their temporary or transitory employees be dismissed once their temporary employments expire. *Id.*

The Court need not tarry long here, as it is well established that political patronage restrains freedom of belief and association, are core activities protected by the First Amendment. *Padilla–Garcia*, 212 F.3d at 74 (*citing Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976)). As explained in *Padilla–Garcia*, the Supreme Court has held that non-policymaking public employees are protected from adverse employment decisions based on their political affiliation. *Id.* (*citing, Elrod*, 427 U.S. at 354, 96 S.Ct. 2673; *Branti v. Finkel*, 445 U.S. 507, 516, 100 S.Ct.

1287, 63 L.Ed.2d 574 (1980); and *Rutan v. Republican Party,* 497 U.S. 62, 75, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990)). While doing so, the Supreme Court has emphasized the right to associate with the political party of one's choice as a basic constitutional freedom. *Padilla–Garcia,* 212 F.3d at 74 (and cases cited therein).

Similarly, it is settled that the *Elrod–Branti* doctrine extends to a politically motivated non-renewal of a term of employment, regardless of the transitory nature of the position. *Padilla–Garcia,* 212 F.3d at 75 n. 3 (internal citations omitted). Defendants' reliance on *Hernández Acevedo v. Aponte Roque,* 684 F.Supp. 18, 20 (D.P.R.1988) for the proposition that "at least once" this court has held that there is no clearly established right to have temporary employment contracts renewed, is misplaced.

The court in *Hernández Acevedo* considered the qualified immunity issue at the summary judgment stage; the holding cited by defendants in support of their position was made by the court in evaluating plaintiffs' fourteenth amendment claims; and the first Amendment claims were dismissed after considering a summary judgment record that was devoid of evidence to establish that "affiliation with the NPP was the substantial or motivating factor underlying their dismissals." *Id.* at 20–21 (internal citations omitted). Therefore, at this (the pleading) stage, defendants are not entitled to prevail on the qualified immunity defense.

### D. Supplemental State–Law Claims

Defendants request dismissal of plaintiffs' state-law claims. The request is based on the assumption the Court will dismiss the federal claims. Since the federal claims survive dismissal at this stage, defendants' request must be denied.

### IV. CONCLUSION

In light of the standard governing Fed. R.Civ.P. 12(b)(6), defendants' motion at Docket No. 36 is DENIED. For the same reason, defendants' "Motion to Stay Discovery and to Hold in Abeyance all Deadlines Established in Case Management Order Pending Resolution of Defendants' Request for Dismissal Based on Qualified Immunity" (Docket No. 42) is DENIED AS MOOT.

**SO ORDERED.**