# United States Court of Appeals
## For the First Circuit

No. 06-2543

DR. DANIEL AYALA-RODRÍGUEZ; PRISCILLA CARRASQUILLO;
DANELLIS AYALA-CARRASQUILLO; DANNIS AYALA-CARRASQUILLO;
DENNIS AYALA-CARRASQUILLO,

Plaintiffs, Appellants,

v.

DR. JOHNNY RULLÁN, Secretary of the Health Department of
Puerto Rico (HDPR); DR. HERIBERTO PAGÁN-SÁEZ, Executive Director
of the Medical Services Administration (ASEM); DR. EDWIN MIRANDA,
Director of the Emergency Room of the San Juan Medical Center;
DR. VICTOR MEDINA-CRUZ, Director of Medical Services of the
San Juan Medical Center; PUERTO RICO MEDICAL SERVICES
ADMINISTRATION (ASEM),

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO
[Hon. Gustavo A. Gelpí, U.S. District Judge]

Before
Boudin, Chief Judge,
Torruella and Howard, Circuit Judges.

Raúl Barrera-Morales, Jesús Hernández-Sánchez, and Hernández
Sánchez Law Firm on brief for appellants.
Rosa Elena Pérez-Agosto, Assistant Solicitor General,
Department of Justice, Salvador J. Antonetti-Stutts, Solicitor
General, Mariana D. Negrón-Vargas, Deputy Solicitor General, and
Maite D. Oronoz-Rodríquez, Deputy Solicitor General, on brief for
appellees.

December 19, 2007

**BOUDIN**, **Chief Judge**.    Daniel Ayala, a physician practicing in Puerto Rico, appeals from the dismissal of his law suit charging that his employment contract was not renewed because of political discrimination and without due process.  The district court granted summary judgment in favor of the defendants, so the state of the summary judgment record is of central importance.  It shows the following.

In 1998, Ayala signed a contract with Puerto Rico's Medical Services Administration ("ASEM") to work for a term of one year as a doctor in the emergency room at the San Juan Medical Center.  After receiving satisfactory evaluations, Ayala's annual contract was renewed in 1999, 2000, and 2001.  From late 2001, Ayala was supervised largely by Edwin Miranda, the director of the Medical Center's emergency room, and (ranking above Miranda) by Victor Medina, the Medical Center's Director of Medical Services.

In November 2000, a new governor of Puerto Rico affiliated with the Popular Democratic Party ("PDP") was elected, replacing a governor who had belonged to the New Progressive Party ("NPP").  Ayala is a declared NPP sympathizer, having been a candidate for state representative in 1996 and for mayor of the town of Canovanas in 1999.  The new governor took office on January 2, 2001, and in February appointed Johnny Rullan as the Secretary of Health, whose responsibilities included oversight of ASEM.

On May 22, 2002, Ayala was informed that ASEM would not renew his contract when it expired on June 30, 2002. The letter was signed by Miranda, Medina and Heriberto Pagan--also a doctor and ASEM's executive director, seemingly the only one who had authority to renew or not renew Ayala's contract. Although the letter was deliberately opaque, Ayala was told that the reason was that he had several times violated emergency room sign-in procedures by claiming to have worked during shifts for which he was not present.[1]

Ayala then brought suit in federal district court against Miranda, Medina, Pagan and Rullan, seeking damages and injunctive and declaratory relief. (ASEM was also named but is protected by the Eleventh Amendment.) Ayala's central claim, based on section 1983 and Puerto Rico law, was that he had been fired because of his political affiliation with the NPP in violation of his first amendment rights and without procedural due process. 42 U.S.C. § 1983 (2000); P.R. Laws Ann. tit. 31, § 5141.

In discovery, the defendants turned over various documents--including hospital attendance records--and supplied interrogatory answers from Pagan, Miranda and Medina. Ayala took Miranda's deposition but scheduled and then cancelled depositions

---

[1]The letter mentions ASEM's right to cancel the contract with 30 days' notice for any reason and notes Ayala's retention of clinical privileges through the end of the contract period. Ayala remained on the staff until his contract expired.

for Medina and other key defense witnesses.  The defendants took Ayala's deposition and presented affidavits from witnesses describing the circumstances of Ayala's attendance violations. Thereafter defendants moved for summary judgment.

The gist of Ayala's case was that his NPP affiliation was well known; that the defendants were all PDP supporters; that the misconduct charges against him were false; and that the defendants were motivated by political animus.  The sole "direct" evidence of animus was Ayala's own claim--for which no detail or corroboration was provided--that Miranda had several times confessed to Ayala that Ayala was being dismissed "since I [Ayala] was blue" on "an order from above"--blue being the NPP color.

The defendants' evidence was more substantial.  Under hospital procedures, Ayala had to "punch in" with an ID card that electronically registered his attendance.  Miranda and Medina said in their affidavits that in a January 10, 2002, meeting with Ayala and another doctor, Alejandro Marmolejo, Marmolejo admitted that in December 2001 he had punched in for Ayala using Ayala's card when the latter was not present; that Ayala had not denied this during the meeting; and that both he and Marmolejo were admonished by letter dated January 10, 2002, but given a further chance.

Then, on April 19, 2002, according to evidence not dependent on the defendants' testimony, Ayala's ID card was again used to show him present on the early morning shift when he was in

fact not present according to records prepared by Ivan Rosario, the supervising doctor. An emergency room record keeper, Jesus Rosado, was alerted to the discrepancy when he received a report from Ayala, who purported to have served as the supervising doctor on the same night as Rosario but incorrectly identified the other physicians on duty for the shift.

Concluding that Ayala's report must be fraudulent, Rosado alerted Miranda to the situation. Miranda noted that Ayala's card had been registered at nearly the same time as Marmolejo's, and withheld Ayala's paycheck for the shift until the matter was investigated. According to his affidavit, Miranda then interviewed Ayala and found his explanation wanting. This second violation, according to Miranda, led eventually to the non-renewal decision by the three doctors who signed the letter.

In the affidavits, interrogatory answers or depositions proffered in support of summary judgment, the defendants (apart from Rullan) denied that they were PDP adherents, said (apart from Miranda) that they knew little or nothing of Ayala's political activities, and set forth the facts underlying the misconduct charges against Ayala--averring that this was the basis for their decision. Under oath, Miranda flatly denied ever making the confession claimed by Ayala referring to his "blue" status or orders from above. Rullan rested simply on the lack of any evidence of his involvement.

The district court ruled that Ayala's "conclusory allegations and proffers" that his contract was not renewed because he was "blue" were insufficient to establish a prima facie case of political discrimination. The court said that in any event defendants demonstrated that they would have dismissed Ayala for violating hospital attendance procedures. Ayala's due process claim was dismissed for failure to show any protectable interest in renewal of his contract.

In Ayala's present appeal, our review is de novo, drawing all reasonable inferences in favor of the non-moving party. Villanueva-Mendez v. Nieves-Vazquez, 440 F.3d 11, 15 (1st Cir. 2006). Under the Elrod line of cases, Ayala could not be terminated, or renewal of his contract refused, for partisan political reasons;[2] partisan motive would not matter if legitimate reasons would independently have brought about the same result. Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 285-87 (1977).

Turning to the individual defendants, Ayala's claim against Rullan, the Secretary of Health, is the weakest of all. Ayala has no evidence whatever that Rullan was involved in any of the actions taken against him. There is no evidence that the

---

[2]Elrod v. Burns, 427 U.S. 347 (1976); see also Rutan v. Republican Party of Ill., 497 U.S. 62 (1990). That Ayala was an independent contractor and not an employee would not matter. Santiago-Negron v. Castro-Davila, 865 F.2d 431, 436 (1st Cir. 1989).

Secretary of Health is ordinarily involved in renewals of contracts of individual emergency room doctors, still less that Rullan knew of Ayala, the dispute about his alleged misconduct, or the decision not to renew the contract.

Miranda's alleged statement that the decision to terminate Ayala came "from above" does not indicate which senior official supposedly played a role in the process. Since Miranda flatly denies ever making the statement, examining him at trial-- even if the jury disbelieved his denial that the statement had been made--could not allow a rational jury to conclude that Rullan was the specific person in the hierarchy who for political reasons supposedly instigated the non-renewal.

In his deposition, Ayala repeatedly described the alleged "order from above" without indicating that the person concerned had been named. In his affidavit he again made no claim that Miranda made an explicit identification but insisted that the non-renewal decision "had come from the 'higher top,' meaning the Secretary of the Health Department of Puerto Rico."

If the affidavit means that Miranda identified the order as coming from the Secretary, this would effectively alter Ayala's deposition testimony in his favor; we have said before that such maneuvers are inherently unpersuasive unless a reasonable explanation for the charge is given. Cf. Colantuoni v. Alfred Calcagni & Sons, Inc., 44 F.3d 1, 4-5 (1st Cir. 1994). Further,

-7-

the affidavit is suspiciously imprecise; it does not even now say that Rullan was identified by Miranda nor does it point to other evidence for Ayala's claim of Rullan's involvement.

The burden of showing that Rullan participated in the decision lay squarely upon Ayala. That Rullan headed the department does not make him liable merely on that account; there is no respondeat superior liability under section 1983. Rizzo v. Goode, 423 U.S. 362, 375-77 (1976). Ayala could have taken Rullan's deposition, interrogated him under oath, and sought to use any admissions against him. But Ayala failed to do so, and on this record has no colorable claim against Rullan.

By contrast, Pagan did sign the non-renewal letter to Ayala and, although Miranda and Medina signed the letter as well, Pagan seemingly had the final authority to decide on renewal. But Ayala does not assert that Miranda--assuming he made the "order from above" statement--was referring to Pagan; Ayala instead argues, but with no evidence, that the statement referred to Rullan. In any event, there is no evidence admissible against Pagan that he acted from a discriminatory motive, nor did Ayala take Pagan's deposition to uncover any evidence against him.

Miranda's alleged statement, if made, would be admissible against Miranda as an admission (of what is another question); but it is hearsay as against anyone else and it is not clear that it

-8-

would be admissible against Pagan.[3]  And, even if it were admissible against Pagan, no proof exists that the conclusory statement "since I was blue" is a quotation from Pagan or rests on anything that Pagan said to Miranda.  As Miranda denies making the statement, its meaning could not be illuminated by cross-examination.

Had Pagan endorsed groundless action against Ayala, this might contribute to an inference of discriminatory intent if it were coupled with some proof of animus, such as the affirmative threats or hostile remarks that are common in political discrimination cases, e.g. Rodriguez-Marin v. Rivera-Gonzalez, 438 F.3d 72, 78 (1st Cir. 2006).  But Pagan made no such threats and his actions followed an investigation of Ayala by Miranda and Medina which, mistaken or not in its conclusions, certainly looked (and still looks) inculpatory.  Pagan did not need to make out a Mt. Healthy defense: it is enough that there is no reasonable inference that he acted out of discriminatory intent and therefore no case against him.  Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 56-58 (1st Cir. 1990).

Medina is in the same position as Pagan save that he seemingly lacked authority to refuse to renew the contract.  He

---

[3]To make the statement admissible against others, Ayala would probably have to show by independent evidence that the three were conspirators and that the statement was made in furtherance of the conspiracy.  Fed. R. Evid. 801(d)(2)(E).  It is unclear how he could do either without bootstrapping, let alone both.

made no admission himself; and even if Miranda's "order from above" statement was made and was admissible against anyone other than Miranda, Ayala does not claim that Medina was the person referred to in the statement or that Medina said anything about "blue." There is again no evidence admissible against Medina of discriminatory animus.[4]

Miranda is the only defendant against whom Ayala has any useful evidence--but evidence consisting <u>entirely</u> of an alleged admission by Miranda for which Ayala is the only witness. There is good reason, quite apart from Miranda's flat denial, to doubt that the admission was ever made. Ayala suggests no reason why Miranda would have made such admission, and offers few specifics about the circumstances (<u>e.g.</u>, dates of the statements). A review of Ayala's deposition testimony on other issues gives the impression that he would not make a very believable witness.

Credibility issues are for the jury, <u>Velazquez-Garcia</u> v. <u>Horizon Lines of P.R., Inc</u>, 473 F.3d 11, 17-18 (1st Cir. 2007), so a court's skepticism of Ayala's statement would not itself ordinarily be the basis for granting summary judgment. But the words Ayala attributes to Miranda are <u>not</u> an admission that <u>Miranda</u>

---

[4]Discriminatory animus cannot be based merely on adherence to an opposing political party. <u>Marrero-Gutierrez</u> v. <u>Molina</u>, 491 F.3d 1, 9-10 (1st Cir. 2007). Further, Ayala presented no persuasive evidence that Pagan and Medina are PDP supporters. When asked how he came to know that Pagan and Medina were PDP members, Ayala claimed to know "what party one is from" based on generalizations about clothing and "joyful expressions" the day after elections.

acted out of political animus. Rather, the alleged admission is that someone else ordered the non-renewal of the contract based on an improper political motivation. This is not without more a basis to impose liability on Miranda.

On the present record, Miranda has a rational explanation for the non-renewal, namely, evidence that Ayala was disobeying sign-in requirements even after having been warned and given a second chance. A succession of affiants, several disinterested, proved that incidents occurred creating a basis for this belief. Documentary evidence supports this testimony. No rational jury could doubt that such incidents occurred, even if Ayala could argue that faulty records or mistaken inferences were to blame.

Accordingly, to hold Miranda liable one would have to find that he was party to some kind of conspiracy in which on orders from above the incidents were misinterpreted or exaggerated, multiple witnesses suborned, documentary evidence fabricated, and Miranda himself coerced or induced to take part in a plot. There is no concrete proof of any such an imposture, nor any indication of how it was accomplished, what role Miranda played, or why he would have been willing to become a party to it. On this record, the notion is little more than fantasy.

We cannot find, and Ayala has not offered, any precedent for a trial in such circumstances. Typically, in political discrimination cases, proof is offered of actual animus (e.g.,

specific threats of political retaliation by the defendant or allies) and a lack of objective support for the action taken. For a jury to find either element on the present record would not merely be impermissible jury speculation but speculation in the teeth of much contrary evidence.

Summary judgment is not a trial but rather a projection of the evidence that would be offered at trial. Trials are held in civil cases only where there is enough evidence to permit a jury to decide the case in favor of the party bearing the burden of proof on the central issue: here, a supposed conspiracy to dismiss Ayala because of his political beliefs. Ayala has assembled no such evidence; indeed, by failing to depose anyone who might have given the alleged order, he has scarcely tried.

Ayala's procedural due process claim requires almost no discussion. Ayala's contract was not terminated; rather, he retained his privileges until it expired on June 30, 2002, and it was then not renewed. Procedural rights would attach under the due process clause only if Ayala had some kind of property interest in its renewal. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538 (1985). If so, he might have been entitled to some kind of informal hearing incident to the decision not to renew the contract.

An ordinary "at will" employment contract creates no protectable expectation of continued employment, Cummings v. S.

-12-

Portland Hous. Auth., 985 F.2d 1, 2 (1st Cir. 1993), and Ayala's termination of his annual contract is no different.  Ayala's contract with ASEM clearly contained a clause reserving to ASEM "the right to cancel this contract at any time, with at least thirty days advance notification."  Ayala was in fact given slightly more than 30 days' notice of non-renewal.  There was no denial of due process.

Affirmed.