Francisco MARTINEZ DIAZ, Plaintiff

v.

UNKNOWN OFFICERS OF the PUER-
TO RICO POLICE DEPARTMENT;
Unknown Officers of the San Juan
Municipal Police, Hon. Pedro Toledo,
as Superintendent of the Puerto Rico
Police Department; Municipality of
San Juan; Col. Adalberto Mercado
Cuevas, as Commissioner of the San
Juan Municipal Police; Common-
wealth of Puerto Rico; Insurance
Company XYZ, Defendants.

Civil No. 07–1373 (JAG).

United States District Court,
D. Puerto Rico.

May 1, 2008.

Jose J. Santos–Mimoso, San Juan, PR, for Plaintiff.

Monica A. Sanchez–Rivera, Departamento de Justicia, Wandymar Burgos–Vargas, P.R. Department of Justice—Federal Litigation, Antonio Montalvo–Nazario, Ernesto Rovira–Gandara, Francisco J. Amundaray–Rodriguez, Mercado & Soto, Jorge R. Quintana–Lajara, Quintana & Suarez, P.S.C., Jose A. Miranda–Daleccio, Miranda Cardenas & Cordova, San Juan, PR, Michael C. McCall, Aldarondo & Lopez Bras, Damaris Delgado–Vega, Guaynabo, PR, for Defendants.

## AMENDED OPINION AND ORDER

GARCIA–GREGORY, District Judge.

Pending before the Court is Defendants' Pedro Toledo ("Toledo") and the Commonwealth of Puerto Rico ("the Commonwealth") Motions to Dismiss. (Docket Nos. 7, 17). For the reasons set forth below, the Court **GRANTS** Defendants' Motions.

## FACTUAL AND PROCEDURAL BACKGROUND

On May 2, 2007, Plaintiff Francisco Martinez Diaz ("Plaintiff") filed the present complaint requesting money damages pursuant to 42 U.S.C. § 1983. The complaint alleges that on December 8, 2006, at around 1:00 a.m., Plaintiff was driving his motorcycle in the area of De Diego Avenue in Puerto Nuevo, San Juan. As he was doing so, several unknown officers of the San Juan Municipal Police ("SJMP") tried to intercept him and, without warning, started firing shots at him. Plaintiff tried to evade the officers, who were chasing him while continuing to fire their guns. After several minutes, Plaintiff came upon a roadblock set up by the officers of the Puerto Rico Police Department ("PRPD"). When he swerved to avoid the roadblock, the PRPD officers joined their fellow SJMP officers in firing their weapons at Plaintiff. As a result, Plaintiff received multiple gunshot wounds to his lower back, leg and buttocks. His motorcycle also received damage from the bullets. Plaintiff was taken to the hospital where he had to undergo emergency treatment and surgery for the removal of one of the bullets. Hereafter, plaintiff had to undergo a second surgery for the removal of another bullet. Plaintiff still has one bullet lodged in his back.

Plaintiff alleges Fourth, Fifth, and Fourteenth amendment violations, as well as an action pursuant to Article 1802 of the Puerto Rico Civil Code, 31 L.P.R.A. § 5141 (Puerto Rico's general tort statute) and 32 L.P.R.A. § 3077 (which deals with suits and claims against the Commonwealth). Plaintiff alleges that the Commonwealth of Puerto Rico ("the Commonwealth") and the Municipality of San Juan maintained improper policies and performed inadequate training of its police officers with regards to the use and discharge of firearms, as well as with regards to the detention of persons. Plaintiff also brings an action against Hon. Pedro Toledo Dávila, in his official capacity as Superintendent of the PRPD ("Toledo") and Hon. Adalberto Mercado Cuevas in his official capacity as Commissioner of the SJMP ("Mercado"). This action is based on the allegation that both Toledo and Mercado were negligent because they failed to properly supervise and train several unknown police officers. In addition, the complaint brings a cause of action against several unknown PRPD officers and SJMP officers for reckless and negligent disregard of Plaintiff's constitutional rights. Lastly, Plaintiff brings an action against XYZ Insurance Company for a policy issued in favor of Defendants which covers the acts herein. (See Docket No. 1).

On July 18, 2007, Defendants Toledo, in his official capacity, and the Commonwealth (jointly "Defendants") moved to dismiss the complaint pursuant to Fed. R.Civ.P. 12(b)(6). Defendants contend that pursuant to the Eleventh Amendment of the United States Constitution the present case should be dismissed. (Docket No. 7). On September 7, 2007, Plaintiff filed a response to Defendants' motion to dismiss where he conceded that the claims under 42 U.S.C. § 1983 against the Commonwealth are barred by the sovereign immunity doctrine of the Eleventh Amendment (Docket No. 14). However, Plaintiff restated his supplemental claims against the Commonwealth under 32 L.P.R.A. § 3077 for violations of 31 L.P.R.A. § 5141. Although, Plaintiff conceded that the claims against Toledo in his official capacity were barred by the sovereign immunity doctrine, he declared an actionable claim against Toledo in his personal capacity for allegedly violating Plaintiff's constitutional rights. On the same day, Plaintiff filed an amended complaint which restated the claims in the original complaint and added a new claim against Toledo in his personal capacity (Docket No. 16). On September 10, 2007, Defendant Toledo, in his personal capacity, filed a motion to dismiss Plaintiff's claim against him. Toledo alleges that Plaintiff failed to state an adequate claim of supervisory liability. Furthermore, Toledo avers that Plaintiff has no valid Article 1802 claim. Additionally, Toledo presented a defense of qualified immunity. (Docket No. 17). On October 24, 2007, Plaintiff filed a response to Toledo's Motion to Dismiss. (Docket No. 27).

## STANDARD OF REVIEW

### A. *Motion to Dismiss Standard*

In *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Supreme Court recently held that to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "a plausible entitlement to relief." *Rodriguez–Ortiz v. Margo Caribe Inc.*, 490 F.3d 92, 95–96 (1st Cir.2007) (quoting *Twombly* 127 S.Ct. at 1967). While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to "nudge [Plaintiffs'] claims across the line from conceivable to plausible." *Twombly*, 127 S.Ct. at 1974. Accordingly, in order to avoid dismissal, the Plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* at 1965.

The Court accepts all well-pleaded factual allegations as true, and draws all reasonable inferences in Plaintiff's favor. See *Correa–Martinez v. Arrillaga–Belendez*, 903 F.2d 49, 51 (1st Cir.1990). The Court need not credit, however, "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like" when evaluating the Complaint's allegations. *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir.1996). When opposing a Rule 12(b)(6) motion, "a Plaintiff cannot expect a trial court to do his homework for him." *McCoy v. Massachusetts Institute of Tech.*, 950 F.2d 13, 22 (1st Cir.1991). Plaintiffs are responsible for putting their best foot forward in an effort to present a legal theory that will support their claim. *Id.* at 23 (*quoting Correa–Martinez*, 903 F.2d at 52). Plaintiffs must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable theory." *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir.1988).

## DISCUSSION

### A. *Claims Against the Commonwealth*

Since Plaintiff concedes that the sovereign immunity doctrine bars all claims against the Commonwealth under

42 U.S.C. § 1983[1], the only remaining claim against the commonwealth is a state law claim. Plaintiff's amended complaint alleges supplemental state law claims brought pursuant to Article 1802, and under 32 L.P.R.A. § 3077, to recover damages inflicted by the tortious acts of the Defendants. The Court must address the issue of whether supplemental state law claims are allowed to proceed when all federal claims have been dismissed.

■ This Court should decline to exercise supplemental jurisdiction over a Plaintiff's state law claims when all federal claims are dismissed. *See Camelio v. American Federation*, 137 F.3d 666, 672 (1st Cir.1998)("[T]he balance of competing factors ordinarily will weigh strongly in favor of declining jurisdiction over state law claims where the foundational federal claims have been dismissed at an early stage in the litigation.") (citations omitted). Certainly, this case is no exception.

Since Plaintiff has conceded that all federal claims against the Commonwealth are barred by the sovereign immunity doctrine, we will not exercise supplemental jurisdiction over Plaintiff's remaining state law claims against said defendant.

### B. *Claims Against Toledo in his Personal Capacity*

■ Plaintiff claims that Toledo, in his personal capacity, violated his constitutional rights by failing to train and supervise the unknown PRPD who shot Defendant. Toledo moves the Court to dismiss for failure to state a claim of supervisory liability under 42 U.S.C. § 1983, and in the alternative argues qualified immunity.

### 1. *Supervisor Liability*

■ Defendant Toledo contends that he cannot be held liable because Section 1983 does not impose *respondeat superior* liability. It is well settled law that there is no *respondeat superior* liability under section 1983. *Ayala–Rodriguez v. Rullan*, 511 F.3d 232 (1st Cir.2007)(citing *Rizzo v. Goode*, 423 U.S. 362, 375–77, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976)). Under section 1983, supervisory liability can only be grounded on the supervisor's own acts or omissions either through the supervisor's direct participation in the unconstitutional conduct, or through conduct that amounts to condonation or tacit authorization. *Whitfield v. Melendez–Rivera*, 431 F.3d 1, 14 (1st Cir.2005)(internal citation omitted). "Absent direct participation, a supervisor may only be held liable where (1) the behavior of [his] subordinates results in a constitutional violation and (2) the [supervisor's] action or inaction was 'affirmatively linked' to the behavior in the sense that it could be characterized as supervisory encouragement, condonation or acquiescence or gross negligence ... amounting

---

1. We interestingly note, that Plaintiff argued that Article 1802 of the Puerto Rico Civil Code waives the Commonwealth's sovereign immunity. The Commonwealth does not waive its sovereign immunity under Article 1802 of the Puerto Rico Civil code. The Commonwealth of Puerto Rico is treated as a state for purposes of Eleventh Amendment immunity analysis. *Redondo Constr. Corp. v. P.R. Highway & Transp. Auth.*, 357 F.3d 124, 125 n. 1 (1st Cir.2004). The Commonwealth can waive its immunity in three ways: "(1) by a clear declaration that it intends to submit itself to the jurisdiction of a federal court ...; (2) by consent to or participation in a federal program for which waiver of immunity is an express condition; or (3) by affirmative conduct in litigation." *New Hampshire v. Ramsey*, 366 F.3d 1, 15 (1st Cir.2004) (citations omitted). Neither Section 1802 or 1803 contain an explicit waiver of the Commonwealth's sovereign immunity. *Diaz–Fonseca v. Puerto Rico*, 451 F.3d 13, (1st Cir.2006). Furthermore, Plaintiff does not direct us to any law to the contrary, nor do he argue that the Commonwealth has waived its immunity by any other means.

to deliberate indifference." *Id.* (internal citations and quotations omitted). A supervisor's action or inaction amounts to deliberate indifference only if "it would be manifest to any reasonable official that his conduct was very likely to violate an individual's constitutional rights." *Germany v. Vance*, 868 F.2d 9, 18 (1st Cir.1989). "The 'affirmative link' requirement contemplates proof that the supervisor's conduct led inexorably to the constitutional violation." *Hegarty v. Somerset County*, 53 F.3d 1367, 1380 (1st Cir.1995)(internal citations and quotations omitted).

▮▮▮▮ Claims of inadequate training require proof that the failure to train was a policy or deliberate choice made by the Defendants and that there is a direct link between the Defendants inaction and the constitutional violation. *See Bowen v. City of Manchester*, 966 F.2d 13, 18 (1st Cir. 1992). Evidence of an isolated negligent act is not sufficient to satisfy this heavy burden. *See id.* Furthermore, with regards to Defendants' lack of practices and procedures, Plaintiff must show that the supervisors' policies or customs caused the alleged constitutional deprivations. Furthermore, Plaintiff must show that the asserted policy was well-settled and widespread and Defendants did nothing to end the practice. *See Elliott v. Cheshire County*, 940 F.2d 7, 12 (1st Cir.1991).

Plaintiff has not put forward any evidence that Toledo had any direct participation in the events that occurred in December 2006. Therefore, Toledo would only be responsible if his subordinates violated Plaintiff's constitutional rights and his inaction was "affirmatively linked" to Plaintiff's constitutional rights violations. In order to determine whether Toledo is liable, the Court must examine whether the actions of the unknown police officers violated Plaintiff's constitutional rights under the Fourth, Fifth and Fourteenth Amendments. If it is determined that there was a constitutional violation, then Toledo's own actions would be subject to scrutiny.

### a. *Fourth Amendment*

▮▮▮▮ Plaintiff alleges a Fourth Amendment violation, but does not proffer any specific arguments as to why it was violated. The Court assumes that the only potential viable argument is that the officers of the PRPD and the SJPD used excessive force. The Fourth Amendment protects citizens against "unreasonable" searches and seizures from the government. U.S. Const. Amend. IV. To determine whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interest against countervailing governmental interests at stake. *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Further, in determining the "reasonable" standard, the question is whether officers' actions are "objectively reasonable" in light of facts and circumstances confronting them, without regard to their underlying intent or motivation. *Id.* at 396, 109 S.Ct. 1865. "The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* citing *Terry v. Ohio*, 392 U.S. 1, 20, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Further, the Supreme Court stated that "the calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation." *Id.* at 397, 109 S.Ct. 1865. However, deadly force may not be used unless it is "necessary to prevent the escape and the officer has

probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." *Tennessee v. Garner,* 471 U.S. 1, 11, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985).

Since Plaintiff alleges that the police officers used deadly force against him, and Defendant has not proffered any arguments which would demonstrate that the officers had probable cause or the suspect posed a threat, the Court will construe Plaintiff's factual allegations in a light more favorable to him, and for the purposes of this analysis assume that there is a Fourth Amendment violation.

### b. *Fourteenth Amendment*

Although Plaintiff contends that his rights were violated under the Fourteenth Amendment, the United States Supreme Court has clarified that all claims that law enforcement officers have used excessive force, deadly or not, in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard, rather than under a "substantive due process" approach of the Fourteenth Amendment. *Carr v. Tatangelo,* 338 F.3d 1259 (2003) citing *Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Therefore, Plaintiff's argument of a violation of his rights under the Fourteenth Amendment is dismissed.

Only for the purposes of this analysis, this Court has concluded that Plaintiff has an adequate Fourth Amendment violation.[2] Even so, Plaintiff has not proffered sufficient allegations to withstand the second prong of the supervisor liability test. As explained above, in order to meet the requirements of the second prong of supervisor liability, the Plaintiff must show enough evidence that "the [supervisor's] action or inaction was 'affirmatively linked'" to demonstrate that the supervisor encouraged or condoned the negligent behavior. Since Plaintiff has not shown any factual evidence that Toledo encouraged, condoned or acquiesced the behavior of the unknown police officers it cannot be concluded that Toledo is liable under the doctrine of supervisor liability.

### c. *Fifth Amendment*

■ The due process clause of the Fifth Amendment states in pertinent part that: "No person shall ... be deprived of life, liberty, or property, without due process of law ..." U.S. Const. Amend. V. The Fifth Amendment applies only to actions of the federal government not those of private individuals, nor of state governments. *Public Utilities Commission v. Pollak,* 343 U.S. 451, 461, 72 S.Ct. 813, 96 L.Ed. 1068 (1952); *see also Gerena v. Puerto Rico Legal Services, Inc.,* 697 F.2d 447, 448 (1st Cir.1983).

■ In the case at bar, Toledo is being sued in his personal and individual capacity. Thus, there is no federal government action. As such, the Fifth Amendment is inapplicable as to said defendant, and Plaintiff's Fifth Amendment claims against Pedro Toledo shall be dismissed.

For the aforementioned reasons, this Court finds that Toledo did not violate Plaintiff's constitutional rights. Consequently, Plaintiff's section 1983 claims against Toledo shall be dismissed.[3]

---

**2.** This opinion and order, should not be construed as favoring Plaintiff's Fourth Amendment claim on the merits.

**3.** The Court need not discuss Defendants' argument of qualified immunity. However, we note that Defendants did not put forth any allegations that the police officers had probable cause when shooting at Plaintiff. Therefore, Toledo is not entitled to qualified immunity.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' motions to dismiss. (Docket Nos. 7 and 17). As such, Plaintiff's Section 1983 claims against the Commonwealth and Toledo are dismissed with prejudice. Plaintiff's state law claims as to those defendants are dismissed without prejudice. Partial Judgment dismissing Plaintiff's claims against the Commonwealth of Puerto Rico and against Pedro Toledo shall be entered accordingly. Plaintiff's claims against the other defendants remain pending.

IT IS SO ORDERED.