Adaliz **SAYAN–RESTO**, Plaintiff,

v.

Angel **BERRIOS**, et al., Defendants.

Civil No. 10–1562 (ADC).

United States District Court,
D. Puerto Rico.

March 27, 2013.

Adriana G. Sanchez–Pares, Alvaro R. Calderon, Jr., Alvaro R. Calderon, Jr., LLP, San Juan, PR, for Plaintiff.

Victor A. Ramos–Rodriguez, Victor A. Ramos Rodriguez Law Office, Carolina, PR, Wilfredo Diaz–Narvaez, Wilfredo Diaz Narvaez Law Office, Lavinia Aparicio–Lopez, Commonwealth Department of Justice, San Juan, PR, for Defendants.

## OPINION AND ORDER

AIDA M. DELGADO–COLÓN, Chief Judge.

Adaliz Sayán–Resto ("Sayán" or "plaintiff") filed the present complaint against several defendants pursuant to 42 U.S.C. § 1983 ("Section 1983") for violations of her rights under the First, Fourth, and Fourteenth Amendments. **ECF No. 1.**[1] Plaintiff also sought this Court's supplemental jurisdiction over violations to Sections 1, 4, 7, and 8 of the Bill of Rights of the Constitution of the Commonwealth of Puerto Rico and the Commonwealth's tort statutes, P.R. Laws Ann. tit. 31, §§ 5141 *et seq. Id.* Now before the Court is co-defendants' José Figueroa–Sancha, Emilio Díaz–Colón, José Caldero–López, David Ortiz–Echevarría, Daniel Rosa–Bonilla and Aníbal Martínez–Martínez' (collectively "co-defendants") motion to dismiss the fourth amended complaint (**ECF No. 146**) and plaintiff's opposition thereto (**ECF No. 147**). For the reasons discussed herein, co-defendants' motion (**ECF No. 86**) is

---

1. The complaint was subsequently amended. *See* **ECF Nos. 26, 84, 103.**

**GRANTED IN PART AND DENIED IN PART.**

## I. Factual Background

Plaintiff brings suit against Emilio Díaz–Colón ("Díaz–Colón"); José Figueroa–Sancha ("Figueroa–Sancha"); David Ortíz–Echevarría ("Ortíz–Echevarría"); José Caldero–López ("Caldero–López"), Mary Doe, and their Conjugal Partnership; Daniel Rosa–Bonilla ("Rosa–Bonilla"), Flo Doe, and their Conjugal Partnership; Ángel Berríos ("Berríos"), Jane Doe, and their Conjugal Partnership; Aníbal Martínez–Martínez' ("Martínez"), Flo Doe, and their Conjugal Partnership; and ABC Insurance Co.[2] **ECF No. 146.** Unless otherwise noted, the relevant allegations, which are assumed to be true, are derived from plaintiff's fourth amended complaint. *Id.*

Plaintiff is legally married to Mr. Victor Narváez ("Narváez"); yet they have been separated since November 27, 2009. *Id.* at ¶ 3.1. On the afternoon of February 24, 2010, plaintiff took Narváez (to a medical appointment because he did not have a means of transportation. During a discussion on the way back to his house from the appointment, Narváez assaulted plaintiff, hitting her face with his fists, and bruising and cutting one of her cheekbones. *Id.* at ¶ 3.2. During the assault, construction workers, who were close to the car, opened the car door and dragged Narváez out, at which point plaintiff was freed from his grasp.

Moments later, plaintiff received a call on her personal mobile phone from codefendant, Sergeant Berríos, calling from Puerto Rico Police Headquarters. Berríos informed plaintiff that Narváez had filed an assault complaint against her under Law 54 and ordered her to appear at headquarters. Sergeant Berríos threatened plaintiff that if she did not report promptly to headquarters, he would order her arrest. *Id.* at ¶ 3.3. During this conversation, plaintiff tried to explain that she was the one assaulted by her husband and that he had cut her face. Plaintiff also told Sergeant Berríos that she urgently needed medical assistance to suture her face. Berríos refused to listen to plaintiff, threatened her, and once again ordered her to appear at police headquarters. *Id.* at ¶ 3.4. Plaintiff immediately drove to police headquarters and reported to Berríos who, after looking at plaintiff and her medically unattended face, locked her inside a cell for approximately five hours without any medical assistance. *Id.* at ¶ 3.5. Berríos ordered a female agent to search plaintiff and ordered plaintiff to take off her shoes and turn in her belongings. At approximately 5:30 p.m., Sergeant Berríos locked plaintiff in a cell. *Id.* at ¶ 3.6.

Berríos did not show plaintiff the complaint filed against her and he did not give her any information regarding the same. He did not allow her to file her own complaint or declaration. *Id.* at ¶ 3.7. While plaintiff remained in the cell, Berríos did not provide her with a phone call, water, food or even something to clean the blood off her face. Moreover, he did not read plaintiff her rights or advise her of her right to an attorney. *Id.* at ¶ 3.8. A couple of hours later, police personnel from the Puerto Rico Police Department's Law 54 division in Carolina arrived at headquarters to process the alleged Law 54 complaint against plaintiff. When the Law 54 policewoman saw the blood and bruises

---

2. On April 24, 2012, plaintiff voluntarily dismissed all claims against co-defendant Juan E. Sergio–Rubín. **ECF No. 114;** *see* **ECF No. 119.** The Court notes that, on September 27, 2012, the Court granted unknown defendants' motion to dismiss (**ECF No. 86**) and dismissed without prejudice claims against John Doe, Richard Roe and ABC Insurance Company.

on plaintiff's face, she refused to file charges or process the case, stating that it was evident that plaintiff was the one assaulted. *Id.* at ¶ 3.9.

The Law 54 policewoman questioned Sergeant Berríos as to whether plaintiff had received any medical assistance, to which he responded that no female agents were present to take plaintiff to the hospital. However, plaintiff alleges that there was a female agent present, who searched her when she was incarcerated. The Law 54 policewoman left headquarters without processing the case against plaintiff. *Id.* at ¶ 3.10. Plaintiff later received a visit from a friend who was in charge of her children while she was detained. However, Berríos did not allow plaintiff's friend to visit her and remarked that she should arrange to visit plaintiff at the Women's Prison in Vega Alta "because she was going to be there for a very long time." Plaintiff's friend left. *Id.* at ¶ 3.11.

Several hours later, plaintiff was still in pain and detained in the cell, without any provisions. She screamed desperately, asking for a pain reliever or to be taken to the hospital. At that moment, a policewoman, Agent González, appeared and asked plaintiff what was wrong and inquired about her injuries. Plaintiff relayed the events of the day. Apparently, Berríos had left headquarters when his shift ended, and left plaintiff in her cell. *Id.* at ¶ 3.12.

Agent González left the reception area to investigate the complaint filed against plaintiff. When she came back to plaintiff's cell, Agent González stated that she did not find any complaint filed against her, nor did she find any entries in the precinct logbook related to her case. She let plaintiff out of the cell to take her to the hospital at approximately 10:30 p.m. *Id.* at ¶ 3.13. In order to follow procedure, Agent González created a blank complaint, explaining that she could not take plaintiff to a hospital without a complaint number. She took plaintiff's statement at 10:30 p.m. *Id.* at ¶ 3.14.

Agent González took plaintiff to the University of Puerto Rico's Hospital in Carolina at approximately 11:10 p.m. However, the emergency room doctor informed plaintiff that, due to the amount of time that had elapsed, he was unable to suture the cut on her face. He cleaned her face and gave her pain medications. By the time plaintiff left the hospital, it was past midnight. *Id.* at ¶ 3.15.

Agent González then took plaintiff to the Law 54 Division headquarters in Carolina to investigate and/or process the alleged complaint filed against plaintiff. Agents in headquarters informed Agent González, in plaintiff's presence, that the matter had been badly managed in the Iturregui Avenue headquarters and that plaintiff's rights had been violated. The agents in the Law 54 Division refused to process any complaint against the plaintiff and requested she come back the following day to speak to a supervisor. *Id.* at ¶ 3.16. Plaintiff was released at approximately 2:00 a.m. *Id.* at ¶ 3.17.

Plaintiff was fearful of going back to police headquarters the following day because Sergeant Berríos was working there. Plaintiff went directly to the Women's Ombudsman, located in the Court of First Instance, Carolina Part, to request that the meeting be held there. *Id.* at ¶ 3.18. There, plaintiff met with the Law 54 Carolina Division supervisor, Sergeant Carmen Marcano, who requested that plaintiff file a Law 54 complaint against her husband. She stated that the division would be in trouble if the complaint was not filed, given how matters were handled the night before. Marcano assured plaintiff that she would assign a good agent to process the case against her husband. Plaintiff then filed the Law 54 complaint against her

husband on February 25, 2010 at around 2:00 p.m., while the other agents accompanying Marcano left the Court to arrest her husband. *Id.* at ¶ 3.19. Subsequently, plaintiff's husband was accused and found guilty of Law 54 violations and assault. *Id.* at ¶ 3.20.

Sergeant Berríos was never removed from his position as the supervisor in the Carolina Precinct. As a result, plaintiff fears for her life and liberty every time she sees a patrol car or is around the precinct. She lives in a constant state of anxiety and nervousness, thinking that Berríos might retaliate against her. *Id.* at ¶ 3.21. Since plaintiff was not provided medical assistance for approximately seven hours after her husband beat her, her face could not be sutured and now she has a permanent scar. *Id.* at ¶ 3.23.

Berríos knew that a complaint had not been filed against plaintiff, yet proceeded to search, seize and arrest plaintiff and denied her medical assistance, water, food, phone call, the right to an attorney, due process rights, and the right to file her own complaint. *Id.* at ¶ 3.24. Before these events transpired, the co-defendants knew that Berríos had incurred in a pattern of aggressive and negligent behavior since 1989, yet none of them took corrective measures or actions against him. Even after the events concerning plaintiff occurred, no corrective action has been taken against Berríos to prevent him from repeating such acts. Plaintiff's requested administrative investigation has not rendered any results or determinations. *Id.* at ¶ 3.25.

Berríos' first incident occurred on July 24, 1989, Complaint No. 01897, claiming he behaved negligently and used profane words towards civilians while directing traffic. The investigation ended with a final recommendation of expulsion against him. However, this determination was never executed; he was allowed to remain and have direct contact with civilians. Co-defendants, after receiving notice of the events involving plaintiff and having access to Berríos' administrative file, did not address the issue, allowing him to continue performing his previous duties. *Id.* at ¶ 3.26.

Subsequently, in 1996, he was charged with "immoral conduct" for an incident that occurred on January 17, 1996, Complaint No. 00065. The complaint was dismissed without any explanation. *Id.* at ¶ 3.27. In 2002, another "immoral conduct" charge was filed against Berríos for events that occurred on August 5, 2002, which led to Complaint No. 00191. The case was similarly dismissed without any justification. *Id.* at ¶ 3.28. That same year, Complaint No. Q–2002–8–27–304 was filed against Berríos for an "unjustified claim" that he filed against a citizen. This complaint was also dismissed without any justification. *Id.* at ¶ 3.29. In December 18, 2002, Berríos, again, was involved in an incident where he was charged for "verbal abuse" towards a citizen, which led to the filing of Complaint No. 00111 in 2003. The complaint was dismissed without any explanation. *Id.* at ¶ 3.30.

In 2005, Complaint No. 00137 was filed against Berríos, charging him with "immoral conduct" for incidents that occurred on June 14, 2005. The complaint was dismissed without justification. *Id.* at ¶ 3.31. Once again, in 2006, Complaint No. 00292 was filed, charging Berríos for "negligent acts" incurred on September 1, 2006. This complaint was also dismissed without justification. *Id.* at ¶ 3.32. Finally, Complaint No. 00045, charged Berríos with the acts concerning plaintiff and is pending before the Office of legal affairs. Berríos has had a total of eight complaints filed against him and the PRPD, and the co-defendants, have done nothing to admonish him or give him appropriate training. *Id.* at ¶ 3.33.

Díaz–Colón, Figueroa–Sancha, Caldero, and Rosa–Bonilla knew about the negligent acts against plaintiff and allowed him to serve as shift supervisor in the Carolina Precinct. They have not taken appropriate corrective measures against Berríos. *Id.* at ¶ 3.34.

On March 12, 2010, Sgt. Carmen Marcano of the West Carolina Police headquarters submitted a letter to the PRPD, through co-defendant Rosa–Bonilla, Director of the PRPD Carolina Region, that informed him of Berríos, negligent and reckless acts. *Id.* at ¶ 3.35. On March 16, 2010, Rosa–Bonilla referred the matter to Captain Juan Rosa–Romero, Director of Administrative Investigations of the Carolina Region, instructing him that an administrative investigation into plaintiff's incident be performed. However, he did nothing to avoid Berríos from having contact with civilians until the investigation was concluded. He allowed Berríos to continue performing his duties. *Id.* at ¶ 3.36. As no action was taken against Berríos, on April 10, 2010, plaintiff informed the Puerto Rico Department of Justice that she would file a complaint for the incidents that had taken place in February 24, 2010. *Id.* at ¶ 3.37.

Three months later, on June 11, 2010, Attorney Ana Arnaldi–Rivera, legal advisor from the Carolina Division, instructed Colonel–Lieutenant Juan Vázquez–Galí ("Vázquez–Galí"), PRPD's Assistant Superintendent for Professional Responsibility, to conduct an administrative investigation on Berríos for the events alleged in the complaint. *Id.* at ¶ 3.38. Figueroa–Sancha was also informed of these events, as well as the administrative complaint, through a letter from the Women's Ombudsman Office, dated June 18, 2010. *Id.* at ¶ 3.39. On September 16, 2010, the Women's Ombudsman Office notified and sent documents pertaining to the case as an urgent matter to Vázquez–Galí. *Id.* at

¶ 3.40. Later, on October 1, 2010, Captain Elías Medina, Director of the Administrative Investigations Bureau, urgently referred the matter to Captain Juan Rosa–Romero, Director of Administrative Investigations at the Carolina Region. *Id.* at ¶ 3.41.

On November 4, 2010, the PRPD issued a Statement of Facts regarding Berríos' complaint, but made no determination as to the consequences of Berríos' conduct. No remedy or corrective measure was ordered. *Id.* at ¶ 3.44. Despite knowing of Berríos' negative administrative record, co-defendants allowed him to act as supervisor for the West Carolina PRPD precinct with direct contact with citizens and potentially with plaintiff. None of the codefendants recommended Berríos be separated from his duties. *Id.* at ¶ 3.45. Co-defendants did not take corrective measures to apprehend or admonish the officers related to this case for failing to make appropriate entries in the precinct logbook pertaining to the plaintiff's arrest. *Id.* at ¶ 3.46.

Ortíz–Echevarría and Caldero failed to take corrective measures against subordinate Sergeant Carlos Cruz of the West Carolina precinct for failing to follow instructions from the Director of the Domestic Violence Division in Carolina. They never took any corrective measures against Berríos, causing plaintiff to constantly fear that Berríos would contact her again since he initially contacted her through her personal mobile phone. *Id.* at ¶ 3.47. Per PRPD regulations, Martínez–Martínez failed to provide proper Law 54 training to a sergeant under his supervision, which caused plaintiff's domestic violence claim to be mismanaged. *Id.* at ¶ 3.48.

At all times, Figueroa–Sancha and Díaz–Colón's policies and decisions have resulted in inadequate selection and training for policemen. The supervision and supervi-

sory policies failed to detect or punish incidents of illegal search and seizures, fabrication of cases against innocent citizens, such as plaintiff, and unwarranted physical violence against citizens and illegal arrests. They also failed to teach, train, and prepare policemen to properly intervene with citizens. The information regarding Berríos' negative and violent past towards civilians was available to co-defendants and they chose to look the other way and not take corrective measures against him in order to avoid the events that occurred. *Id.* at ¶ 3.49. Plaintiff's illegal search, seizure, arrest and detention, without providing medical assistance, are violations of her rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution. *Id.* at ¶¶ 3.52, 3.54.

Plaintiff alleges that co-defendants knew of Berríos' aggressive behavior and propensity for violence and fabrication against innocent citizens and turned a blind eye, failed to properly train, supervise, and take remedial action against him, which constitutes a reckless or callous indifference to plaintiff's constitutional rights. *Id.* at ¶¶ 4.3, 6.5, 7.5, 8.5, 9.4, 9.5, 10.4, 11.2.

## II. Motion to Dismiss Under Fed. R.Civ.P. 12(b)(6)

To survive a Rule 12(b)(6) motion, the plaintiff must plead enough facts to "raise a right to relief above the speculative level." *Bell Atl. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). In evaluating the complaint, the court accepts as true all well-pleaded facts and draws all reasonable inferences in the plaintiff's favor. *Parker v. Hurley,* 514 F.3d 87, 90 (1st Cir.2008). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1940, 1949, 173 L.Ed.2d 868 (2009). "Threadbare recitals of the elements of a

cause of action, supported by mere conclusory statements, do not suffice." *Id.* (*citing Twombly,* 550 U.S. at 555, 127 S.Ct. 1955). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal,* 129 S.Ct. at 1950 (quoting Fed.R.Civ.P. 8(a)(2)); *see Sepúlveda–Villarini v. Dep't of Educ. of P.R.,* 628 F.3d 25, 29 (1st Cir.2010) ("The make-or-break standard [ ... ] is that the combined allegations, taken as true, must state a plausible, not a merely conceivable, case for relief.").

In sum, the court must follow two principles: (1) legal conclusions masquerading as factual allegations are not entitled to the presumption of truth; and (2) plausibility analysis is a context-specific task that requires courts to use their judicial experience and common sense. *Iqbal,* 129 S.Ct. at 1949–50 (*citing Twombly,* 550 U.S. at 555–56, 127 S.Ct. 1955). In applying these principles, courts may first separate out merely conclusory pleadings, and then focus upon the remaining well-pleaded factual allegations to determine if they plausibly give rise to an entitlement to relief. *Id.* at 1950.

## III. Discussion

As a preliminary matter, plaintiff's opposition to the motion to dismiss avers that codefendants submitted a sworn statement as supplementary material to support their motion. Consequently, plaintiff states that the motion should either be reviewed as one for summary judgment or that the sworn statement should be stricken from the record. **ECF No. 147** at 1–3.

When considering a Rule 12(b)(6) motion to dismiss, the Court is unable to review matters outside the pleadings. If it does, then the Court must "treat[ ] [the

motion] as one for summary judgment under Rule 56" and afford all parties "a reasonable opportunity to present all the material that is pertinent to the motion." Fed.R.Civ.P. 12(d). Therefore, the Court may only consider materials outside the pleadings if it converts the motion to one for summary judgement. "However, if the district court chooses ... to ignore supplementary materials submitted with the motion papers and determine the motion under the Rule 12(b)(6) standard, no conversion occurs and the supplementary materials do not become part of the record for purposes of the Rule 12(b)(6) motion." *Trans–Spec Truck Service, Inc. v. Caterpillar Inc.,* 524 F.3d 315, 321 (1st Cir. 2008).

Here, the Court finds no reason for conversion. Thus, the Court will disregard the sworn statement supporting co-defendants' motion to dismiss.

## A. Section 1983 Claim

 Plaintiff brings the present action under Section 1983. It is well-settled that section 1983 creates no independent substantive rights, but rather, provides a cause of action by which individuals may seek money damages for governmental violations of rights protected by federal law. *See Albright v. Oliver,* 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994). Section 1983 applies to the Commonwealth of Puerto Rico and its instrumentalities with the same force as to any state. *See Deniz v. Mun. of Guaynabo,* 285 F.3d 142, 146 (1st Cir.2002); *Martínez v. Colón,* 54 F.3d 980, 984 (1st Cir.1995).

 In order to sustain an action under section 1983, a plaintiff must establish that: (i) the conduct complained of was committed under color of state law[3] and (ii) defendant's conduct resulted in a denial of rights secured by the Constitution or laws of the United States. *See Cepero–Rivera v. Fagundo,* 414 F.3d 124, 129 (1st Cir.2005); *Collins v. Nuzzo,* 244 F.3d 246, 250 (1st Cir.2001); *Rogan v. City of Boston,* 267 F.3d 24, 27 (1st Cir.2001). A plaintiff must show that there is an actual causal connection linking the defendants' conduct to the alleged deprivation. *See Gutiérrez–Rodríguez v. Cartagena,* 882 F.2d 553 (1st Cir.1989). To establish a "but for" causal connection, the plaintiff must show that the defendant was personally involved in the constitutional violation, *see Monell v. Department of S.S.,* 436 U.S. 658, 694 n. 58, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), and that the conduct was either intentional, grossly negligent, or amounted to reckless indifference to the plaintiff's constitutional rights. *See Simmons v. Dickhaut,* 804 F.2d 182, 185 (1st Cir.1986).

Co-defendants move to dismiss all of plaintiffs' Section 1983 claims for failure to state a claim. The Court will analyze whether the four corners of the complaint, as summarized above, hold a plausible Section 1983 claim under the First, Fourth and Fourteenth Amendment.

## B. First Amendment Claim

Co-defendants move to dismiss plaintiff's First Amendment claim. *See* **ECF No. 103** at ¶¶ 1.1, 2.4, 2.5–2.10, 3.52. In her opposition, plaintiff concedes that this claim was erroneously included in the Fourth Amended Complaint. **ECF No. 147** at 17. In light of plaintiff's concession, the Court hereby **DISMISSES WITH PREJUDICE** plaintiff's First Amendment claim.

---

**3.** For Section 1983 liability purposes, "a state employee generally acts under color of state law when, while performing in his official capacity or exercising his official responsibilities, he abuses the position given to him by the State." *West v. Atkins,* 487 U.S. 42, 49, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988).

## C. Title VII Claim

Plaintiff also concedes the Title VII cause of action was erroneously included. **ECF No. 147** at 17. Therefore, the Court **DISMISSES WITH PREJUDICE** plaintiff's Title VII claims.

## D. Fourth Amendment Claim

■ The Fourth Amendment protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Plaintiff's Fourth Amendment rights are only implicated if defendants' conduct infringed "an expectation of privacy that society is prepared to consider reasonable." *O'Connor v. Ortega*, 480 U.S. 709, 715, 107 S.Ct. 1492, 94 L.Ed.2d 714 (1987) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984)). Additionally, the Fourth Amendment protects against the excessive use of force in the course of an arrest. Thus, the Fourth Amendment commands government officials to conduct only those searches and seizures of persons or property which are reasonable. Furthermore, for a state actor to violate the Fourth Amendment by initiating a malicious prosecution against someone, the criminal charges at issue must impose some deprivation of liberty consistent with a 'seizure.' *Britton v. Maloney*, 196 F.3d 24, 28 (1st Cir.1999).

■ Upon review of plaintiff's complaint, the Court finds that she has alleged a plausible Fourth Amendment claim. Plaintiff alleges that Berríos: called her and threatened to arrest her (for her husband's Law 54 complaint) if she did not report to headquarters, despite informing him that she was the assaulted party and that she urgently needed medical care; locked plaintiff in a cell for approximately five hours, without any medical assistance, and ordered a female agent to search her and take her belongings; never gave her any information or showed her the Law 54 complaint; did not allow plaintiff to file her own complaint or declaration against her aggressor; and did not read plaintiff her Miranda rights or provide her with a phone call, water, food, something to clean the blood off her face or medical treatment, or. **ECF No. 146** at ¶¶ 3.3–3.8.

Plaintiff also alleges that she was confined to a cell, without any medical assistance for her injuries and without being able to communicate with anyone, not even a friend who went to the police station to visit her. She further states that she began screaming for help, when a female agent, González, came to her attention. At that time, Berríos had finished his duty and had left plaintiff incarcerated. *Id.* at ¶¶ 3.9–3.12. After investigating, González told plaintiff that she could not find any complaint or entries in the precinct logbook regarding any complaint or charges against her. At approximately 10:30 p.m., González let plaintiff out of the cell and took her to the hospital *Id.* at ¶ 3.13.

Clearly, plaintiff's allegations state a plausible entitlement to relief under the Fourth Amendment. Plaintiff, who was visibly bruised and battered, was incarcerated for over five hours, without probable cause for such arrest and without being afforded or advised of her rights. *See Pena–Borrero v. Estremeda*, 365 F.3d 7 (1st Cir.2004) (holding that plaintiff's allegations of arrest with an unenforceable warrant were sufficient to plead a Fourth Amendment seizure); *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *see also Twombly*, 127 S.Ct. at 1973–74 (reiterating that Rule 8(a) "do[es] not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face"). Accordingly, co-defendants' motion to dismiss plaintiffs' Fourth Amendment claims is **DENIED.**

## E. Fourteenth Amendment Claim

The Due Process Clause of the Fourteenth Amendment to the United State Constitution "provides that certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures." *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 541, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). To succeed on procedural due process claim, plaintiff must show that she had a property or liberty interest, and that defendants, acting under color of state law, deprived her of that interest without due process. *See id.* at 538, 105 S.Ct. 1487. Moreover, property interests are not created by the Constitution, "they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Bd. of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

Due process protections are accorded primarily "to matters relating to marriage, family, procreation, and the right to bodily integrity." *Albright v. Oliver,* 510 U.S. 266, 272, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994). However, the Fourteenth Amendment does not apply to police excessive force cases that involve a seizure, such as this case pleads. These civil action claims are controlled by the Fourth Amendment. *Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (excessive force claims arising in context of arrest or investigatory stop, or other "seizure" of a free citizen, most properly invoke protections of the Fourth Amendment); *Estate of Bennett v. Wainwright,* 548 F.3d 155 (1st Cir.2008); *see also Moreta–Ramírez v. Lemert,* 156 F.Supp.2d 138 (D.P.R.2001).

The Fourth Amendment's protection against seizure only occurs when government actors have, "by means of physical force or a show of authority, . . .
in some way restrained the liberty of a citizen. . . ." *U.S. v. Sealey,* 30 F.3d 7, 9 (1st Cir.1994) (citing *Terry v. State of Ohio,* 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). "Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physical intrusive governmental conduct, that Amendment, not the more generalized 'substantive due process,' must be the guide for analyzing these claims." *Graham,* 490 U.S. at 395, 109 S.Ct. 1865.

Plaintiff's allegations state that Sergeant Berríos, a PRPD officer, violated her civil rights and committed tortious acts by: (i) falsely accusing plaintiff of a crime, (ii) illegally detaining plaintiff, (iii) willfully disregarding her physical well-being, and (iv) engaging in an illegal search and seizure of plaintiff and her belongings. *See generally* ECF No. 103. These fall within the purview of the Fourth Amendment. Thus, plaintiffs' Fourteenth Amendment claim is **DISMISSED WITH PREJUDICE.**

## F. Qualified Immunity

"Qualified immunity 'provides a safe harbor for public officials acting under the color of state law who would otherwise be liable under 42 U.S.C. § 1983 for infringing the constitutional rights of private parties.'" *Borges Colón v. Román–Abreu,* 438 F.3d 1, 18 (1st Cir.2006) (quoting *Whitfield v. Meléndez Rivera,* 431 F.3d 1, 6 (1st Cir.2005)). It is designed to "balance[ ] two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan,* 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009).

In order to determine whether qualified immunity cloaks a supervisory

defendant, the Court applies the following two-prong analysis: "(1) whether the facts alleged ... by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right at issue was 'clearly established' at the time of the defendant's alleged violation." *Maldonado v. Fontanes*, 568 F.3d 263, 269 (1st Cir.2009) (citing *Pearson*, 555 U.S. at 232, 129 S.Ct. 808). *Id.*[4] "The relevant, dispositive inquiry ... is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* (quoting *Brosseau v. Haugen*, 543 U.S. 194, 199, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004)).

 "A right is 'clearly established' if, given the legal contours of the right allegedly violated and the facts of the particular case, a reasonable officer would have understood that his conduct violated that right." *Eldredge v. Town of Falmouth*, 662 F.3d 100, 105 (1st Cir.2011); *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Furthermore, in determining whether a similarly situated reasonable official would have understood that the challenged action violated the constitutional right at issue, "the relevant question is whether a reasonable official could have believed his actions were lawful in light of clearly established law and the information the official possessed at the time of his allegedly unlawful conduct." *Singer v. Maine*, 49 F.3d 837, 844 (1st Cir.1995) (citations omitted). In an excessive force case, the threshold constitutional question is analyzed under the Fourth Amendment's objective reasonableness standard. *See Graham*, 490 U.S. at

394, 109 S.Ct. 1865; *see also Whitfield*, 431 F.3d at 7.

Co-defendants, in general, argue that they are entitled to qualified immunity because they can not be held vicariously liable for Berríos' wrongful acts since they were not personally involved in the incidents surrounding plaintiff's complaint. **ECF No. 146.** Plaintiff counters by averring that the supervisory co-defendants were wilfully blind and deliberately indifferent to Berríos' administrative complaint record, allowed him to become and remain a supervisor with public contact. **ECF No. 147.**

 As stated above, although there is no *respondeat superior* liability under section 1983, a supervisor may be liable for his/her own acts or omissions through "the supervisor's direct participation in the unconstitutional conduct or through conduct that amounts to condonation or tacit authorization." *Ayala–Rodríguez v. Rullán*, 511 F.3d 232 (1st Cir.2007) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–77, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976)); *Whitfield*, 431 F.3d at 14. "Absent direct participation, a supervisor may only be held liable where (1) the behavior of [his] subordinates results in a constitutional violation and (2) the [supervisor's] action or inaction was 'affirmatively link[ed]' to the behavior in the sense that it could be characterized as 'supervisory encouragement, condonation or acquiescence' or 'gross negligence ... amounting to deliberate indifference.'" *Id.* (internal citations omitted). Thus, plaintiff must allege "that the supervisor's conduct (whether action or inaction) constitutes supervisory encour-

---

4. The Supreme Court has held that it is not mandatory for courts to follow this two-step test sequentially. A finding that a right was not clearly established at the time of the alleged violation suffices. The reasoning is a practical one: "discussion of the first prong of the qualified immunity analysis will result in a substantial expenditure of scarce judicial resources on difficult questions that have no effect on the outcome of the case." *Lopera v. Town of Coventry*, 640 F.3d 388, 396 (1st Cir.2011) (internal citations and quotations omitted).

agement, condonation or acquiescence, or gross negligence of the supervisor amounting to deliberate indifference." *Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 47 (1st Cir.2012) (citation and quotation marks omitted).

Regarding plaintiff's unlawful arrest and seizure allegations, co-defendants did not have any direct participation in these events. Therefore, they would only be liable if their inaction was "affirmatively linked" to plaintiffs' constitutional violations. Plaintiff averred that the supervisory co-defendants knew or should have known of Berríos' various egregious acts and still failed to properly train, supervise and take remedial action against Berríos. ECF No. 103 at ¶¶ 4–5. To further bolster these allegations, plaintiff also states that Berríos' tenure with the PRPD has been plagued by a series of administrative complaints against him, yet nothing was done in any of the cases and he continued to have contact with the public.

Specifically, the Fourth Amended Complaint alleges supervisory liability to codefendants as follows:

### (i) Emilio Díaz–Colón

 Díaz–Colón was "included as a defendant in his official capacity for the conduct, misconduct, lack of training and supervision, negligence and damages ... which were notified to him through the PRPD.... As Superintendent, [he] executes the laws and regulations of the Commonwealth of Puerto Rico pertaining to law enforcement and is also responsible for the adequate training and supervision of all the employees and officers of the police department." **ECF No. 103** at ¶ 2.2.

The Court finds the allegations insufficient to forego the qualified immunity defense. Plaintiff's allegations do not state that Díaz–Colón was involved directly or indirectly in the events that transpired. He was named because he was the PRPD Superintendent and was generally responsible for the training and supervision of its officers. However, Díaz–Colón was not even the PRPD Superintendent at that time of the event and is no longer Superintendent.

As the First Circuit stated in *Marrero–Rodríguez v. Municipality of San Juan*, 677 F.3d 497, 503 (1st Cir.2012), "It takes more than this, though, to assert a § 1983 claim against those who have no personal involvement of any sort in the events, such as the Mayor. .... The Mayor is not amenable to suit, as pled in the complaint, merely because he is Mayor.... *See Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691–95, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)...." The same reasoning rings true here. *See also, Soto–Torres v. Fraticelli*, 654 F.3d 153, 159–160 (1st Cir.2011) ("In some sense, all high officials in charge of a government operation 'participate in' or 'direct' the operation. *Iqbal* makes clear that this is plainly insufficient to support a theory of supervisory liability and fails as a matter of law ... For the complaint to have asserted a cognizable claim, it was required to allege additional facts sufficient to make out a violation of a constitutional right ... The complaint would have had to plead facts supporting a plausible inference that [the defendant] personally directed the officers to take those steps against plaintiff which themselves violated the Constitution in some way.") Plaintiff's Fourth Amended Complaint contains no such allegation as to Díaz–Colón. The Court hereby **GRANTS** Díaz–Colón's motion to dismiss on qualified immunity grounds.

### (ii) José Figueroa–Sancha

 By like token, Figueroa–Sancha, the PRPD Superintendent at the time of the incident, was brought in "his individual capacity for the conduct, misconduct, lack

of training and supervision, negligence and damages hereinafter asserted and claimed, which had been notified to him through the PRPD. The Former Superintendent Figueroa–Sancha was responsible for, and made and executed by himself, and through the department's officers and employees, policy decisions regarding training and law enforcement techniques to be employed by the department." **ECF No. 103** at ¶ 2.3. Plaintiff further alleges that Figueroa–Sancha never took any corrective measures against Berríos or any of his supervisors, in spite of his negative administrative complaints record, and after receiving the investigative report regarding plaintiff's allegations. *Id.*

Supervisory liability for the behavior of subordinates attaches under § 1983 if:

(1) the behavior of [his] subordinates results in a constitutional violation, and (2) the [supervisor]'s action or inaction was affirmative[ly] link[ed] to that behavior in the sense that it could be characterized as supervisory encouragement, condonation or acquiescence or gross negligence amounting to deliberate indifference.

*Estate of Bennett v. Wainwright,* 548 F.3d 155, 176–177 (1st Cir.2008) (citing *Pineda v. Toomey,* 533 F.3d 50, 54 (1st Cir.2008)).

Here, although the allegations resemble those of Díaz–Colón, plaintiff also alleges that Figueroa–Sancha was the Superintendent at the time of the incident; received the investigative report on Berríos' unlaw-

ful incarceration of plaintiff; and failed to take any corrective measures. Plaintiff further alleges that this incident is not an isolated one, but that Berríos' administrative records holds complaints that were similarly closed, without any corrective measures. **ECF No. 103** at ¶ 2.3.

At this stage in the proceedings, plaintiff has pled a plausible claim of deliberate indifference inasmuch as she claims that Berríos' administrative record holds numerous complaints against Berríos, which were subsequently closed, without imposing any sanctions or corrective measures. Despite Figueroa–Sancha's knowledge of Berríos' administrative record, alleged conduct and plaintiff's arrest, plaintiff's administrative complaint against Berríos was similarly closed. By failing to take any measures to rectify this conduct or train Berríos and by keeping him as a supervisor who interacts with the public, plaintiff alleges that Figueroa–Sancha's omissions amount to deliberate indifference.[5] Plaintiff alleges that this deliberate indifference ultimately caused the violation of her clearly established rights in as much as she, the victim with open facial wounds, was detained by Berríos without probable cause, the reading of her rights; she was denied visitation, he opportunity to consult a lawyer, and the ability to care for her wounds. Thus, at this stage of the proceedings, the Court **DENIES** Figueroa–Sancha's motion to dismiss on qualified immunity grounds.[6]

**5.** The Court notes that Figueroa–Sancha may renew its qualified immunity defense with a more developed record at summary judgment. The Court further cautions counsel that his argumentation must be supported by case law. Co-defendant's motion to dismiss does not apply any case law to support dismissal as to any of the co-defendants. *See* **ECF No. 146** at 7–14.

**6.** In *Soto–Torres v. Fraticelli,* 654 F.3d 153, 160–161 (1st Cir.2011), The First Circuit found the plausibility standard was not met

because the complaint did not provide facts regarding what the defendant was alleged to have known when or how defendant knew of the acts, or how he somehow personally caused the detention. Here, unlike *Soto–Torres,* plaintiff pleads both knowledge of Berríos' record, plaintiff's incident and unlawful arrest, as well as her administrative complaint. She frames his liability through not taking any corrective or remedial measures against Berríos and following the pattern of

### (iii) David Ortíz–Echevarría

■ Plaintiff's complaint alleges that Ortíz–Echevarría was responsible for Berríos' supervision and training and that, despite knowing of his administrative complaint history regarding alleged civil rights violations, he allowed Berrios to be a supervisor for the West Carolina PRPD precinct and to have direct contact with citizens. The complaint further states that Ortiz–Echevarría failed to adequately supervise Berríos. *See* **ECF No. 103** at ¶ 2.4.

■ At this stage of the proceedings, the Court is reluctant to dismiss. Plaintiff has met the plausibility threshold because she alleged that Ortíz–Echevarría, who was responsible for his supervision and training, did not order Berríos to take any training, despite his administrative complaint record, or implement any corrective measures against him. Furthermore, plaintiff has plausibly pled Ortíz–Echevarría's deliberate indifference to Berrios' conduct. "To demonstrate deliberate indifference a plaintiff must show (1) a grave risk of harm, (2) the defendant's actual or constructive knowledge of that risk, and (3) his failure to take easily available measures to address the risk." *Camilo–Robles v. Hoyos*, 151 F.3d 1, 7 (1st Cir.1998).[7] Plaintiff alleges that, despite Berríos' administrative complaint record, Ortíz–Echevarría condoned his conduct by allowing him to serve as supervisor in direct contact with the public. *See Gutierrez–Rodriguez v. Cartagena*, 882 F.2d 553, 562–64 (1st Cir.1989) (affirming supervisory liability on supervisor who admitted he was aware that PRPD officer had been the subject of ten citizen complaints charging

abuse during his tenure with the Carolina Division and failed to reassign him to a desk assignment.)

Plaintiff further alleges that, by allowing Berrios' direct contact with the public, Ortíz–Echevarría caused plaintiff's incident to occur; and that, even after her own complaint, he did nothing to correct and sanction Berrios' conduct. Instead, Berríos still remains a PRPD supervisor, with direct public contact. As such, plaintiff has plausibly plead a claim of deliberate indifference where supervisory liability may attach. Plaintiff alleges that, by maintaining Berríos in a supervisory position in contact with the public and without proper training, he caused her unlawful arrest and the infringement of her clearly established rights. *See generally Maldonado–Denis v. Castillo–Rodriguez*, 23 F.3d at 582 (explaining that a showing of gross negligence on a supervisory official's part "can signify deliberate indifference and serve as a basis for supervisory liability if it is causally connected to the actions that work the direct constitutional injury"). In light of the foregoing, defendant's request to dismiss Ortíz–Echevarria's complaint on qualified immunity is **DENIED.**

### (iv) José Caldero–López

■ Similarly, plaintiff's complaint alleges that Caldero–López, as the PRPD's Personnel Regional Director for the Carolina, was responsible for the supervision, training and control of Ortíz–Echevarría and Berríos. Plaintiff also links supervisory liability to Caldero–López by stating that he allowed Berríos to act as supervisor for the West Carolina PRPD Precinct and to have direct contact with citizens,

---

closing public complaints against Berríos, without more.

7. Supervisory liability does not require a showing that the supervisor had actual knowledge of the offending behavior; he "may be liable for the foreseeable consequences of such conduct if he would have known of it but for his deliberate indifference or willful blindness." *Maldonado–Denis v. Castillo–Rodriguez*, 23 F.3d 576, 582 (1st Cir.1994).

despite his administrative record and despite having been notified of plaintiff's own grievance. Plaintiff further alleges that, as Ortíz–Echevarría's supervisor, Caldero had the authority to instruct him regarding his subordinates in the West Carolina Precinct and to order any corrective measures against any offending officers, such as Berríos. However, even after receiving a report on plaintiff's allegations, he failed to do so, allowing Berríos to continue performing his duties. **ECF No. 103** at ¶ 2.5.

The Court finds that plaintiff has also pled a plausible entitlement to relief as to Caldero–López. According to plaintiff, Caldero–López knew of the administrative charges lodged against Berríos, including plaintiff's complaint, yet he failed to take any preventive or corrective measures to rectify his conduct or order Ortiz–Echevarría to sanction Berríos. As such, and similar to Ortíz–Echevarría, plaintiff has plausibly plead a claim of deliberate indifference where supervisory liability may attach. In addition, plaintiff alleges that Caldero–López failed to take corrective measures to admonish officers, including Ortíz–Echevarría, for failing to make the appropriate entries in the precinct logbook regarding plaintiff's arrest, stay, and subsequent egress. *See Sánchez v. Pereira–Castillo*, 590 F.3d 31, 49 (1st Cir.2009) ("Although Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*, supervisory officials may be liable on the basis of their own acts or omissions ... [including supervising] with deliberate indifference toward the possibility that deficient performance of the task may contribute to a civil rights deprivation.") (internal quotations and citations omitted). These were violations to clearly established rights. In light of the foregoing, defendant's request to dismiss Caldero–López' complaint on qualified immunity is **DENIED.**

### (v) Aníbal Martínez–Martínez

Plaintiff's complaint alleges that Martínez–Martínez, as PRPD Commander and Berrios's supervisor, was responsible of coordinating and providing Berríos with all the appropriate training, including Law 54 training, during his incumbency as a Precinct Commander. As Berríos's first supervisor as Sergeant in the Carolina precinct (from 2009 until December 20, 2010), plaintiff avers that Martínez–Martinez failed to provide Berríos with adequate Law 54 training. Since the PRPD Domestic Violence (Law 54) regulations establish that PRPD Commanders are responsible for providing Law 54 training to all agents and supervisors, plaintiff alleges Martínez–Martínez, as Commander, breached his duty to provide Berríos Law 54 training which ultimately caused plaintiff's injury. *See* **ECF No. 103** at ¶ 2.10.

The First Circuit recently stated that certain omissions such as "failure to implement policies, protocols, or correct training ..." were inferences that could be drawn from the complaint and were sufficient to plead supervisory liability under § 1983. *Marrero–Rodríguez v. Municipality of San Juan*, 677 F.3d at 502–03. Notwithstanding, to defeat the presumption towards qualified immunity in a failure to train action, the "training program must be quite deficient in order for the deliberate indifference standard to be met: the fact that training is imperfect or not in the precise form a plaintiff would prefer is insufficient to make such a showing." *Young v. City of Providence ex rel. Napolitano*, 404 F.3d 4, 27 (1st Cir.2005).

Although the bar to overcome qualified immunity in such cases is high, the Court is reluctant to dismiss the complaint against Martínez–Martínez at this stage in the proceedings. Plaintiff has met the plausibility threshold. She has stated that Martínez–Martínez was Berríos' Com-

mander and, as his Commander, was required by PRPD regulation to implement Law 54 training to its officers and agents, including Berríos, yet failed to do so. Plaintiff further asserts that this negligent omission, the failure to provide Law 54 training, caused her the injuries alleged in the complaint.

At this stage, the Court **DENIES** Martínez–Martínez' request to dismiss on qualified immunity grounds. However, it will be incumbent upon plaintiff at further, more developed stages in the proceedings to evince proof that the failure to train was a policy or deliberate choice of the supervisory defendant and that a causal link exists to the constitutional injury. *See Bowen v. City of Manchester,* 966 F.2d 13, 18 (1st Cir.1992) (claims of inadequate training require proof that the failure to train was a policy or deliberate choice made by the defendant and that there is a direct link between the defendant's inaction and the constitutional violation.); *cf. Maldonado v. Fontanes,* 568 F.3d at 275 (holding that a mayor's promulgation of a pet policy, coupled with his presence at a challenged pet raid resulting in their mass extermination, was "insufficient to create the affirmative link necessary for a finding of supervisory liability, even under a theory of deliberate indifference").

## IV. Supplemental Jurisdiction

 Co-defendants argue that all claims should be dismissed, including the Commonwealth law claims. **ECF No. 146.** However, as highlighted above, plaintiff has plead a plausible Fourth Amendment claim against co-defendants. Since her Commonwealth claims spring from the same nucleus of operative facts, the Court finds that the federal and Commonwealth claims are part of the same case or controversy for the purposes of 28 U.S.C. § 1367. *BIW Deceived v. Local S6, Indus. Union of Marine & Shipbuilding Workers of Am., IAMAW Dist. Lodge 4,* 132 F.3d 824, 833 (1st Cir.1997) ("A federal court that exercises federal question jurisdiction over a single claim may also assert supplemental jurisdiction over all state-law claims that arise from the same nucleus of operative facts.") (citations omitted). Thus, co-defendants' request that the court dismiss all plaintiffs' supplemental Commonwealth claims is **DENIED.**

## V. Conclusion

In light of the above, co-defendants' motion to dismiss (**ECF No. 146**) is **GRANTED-in-part and DENIED-in-part** as follows:

Plaintiff's Title VII and Section 1983 First Amendment claims are **DISMISSED WITH PREJUDICE;**

Plaintiff's Section 1983 Fourteenth Amendment claims are **DISMISSED WITH PREJUDICE;**

Plaintiff's Section 1983 Fourth Amendment claims against Emilio Díaz–Colón are **DISMISSED WITH PREJUDICE** based on Qualified Immunity;

Defendant's request to dismiss co-defendants José Figueroa–Sancha, Ortíz–Echevarría, Caldero–López, and Martínez–Martínez based on Qualified Immunity is **DENIED;**

Defendant's request to dismiss plaintiff's Commonwealth of Puerto Rico Law claims is **DENIED.**

**SO ORDERED.**